753 So.2d 117 (1999)
Tauric GRIGGS, Appellant,
v.
STATE of Florida, Appellee.
No. 98-1836.
District Court of Appeal of Florida, Fourth District.
December 15, 1999.
*118 Robert L. Bogen of Law Offices of Robert L. Bogen, Boca Raton, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Ettie Feistmann, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, C.J.
In his appeal from a conviction on charges of first degree murder, appellant contends that the state failed to offer evidence which was inconsistent with any reasonable hypothesis of innocence as to either premeditation or to robbery, the predicate felony for a felony murder conviction. Because the state offered evidence inconsistent with his theory of innocence, which was alibi, and there was otherwise substantial competent evidence to support either theory of first degree murder, we affirm.
Around 4:00 to 4:30 on the afternoon of February 21, 1997, a store owner in a strip mall in Hallandale, Florida, heard three shots, looked up, and saw victim Harold Schiff fall to the ground in front of Schiff's furniture store, which was also in the strip mall. Schiff had been shot three times in his lower torso, one bullet severing an artery which caused him to bleed to death.
While the store owner who witnessed the shooting could not identify Griggs, two other witnesses who were also at the strip mall testified that they had observed and identified Griggs. Harlon Jacobs testified that he was in the parking lot and heard the shots fired. A few seconds later, he saw a man with a pistol in his hand pointed at the ground. The man was wearing dark clothes and a knit ski cap that was not covering his face. Jacobs identified Griggs both in court and from a photo line-up as the man he saw with the pistol. A second eyewitness, Daniel Friedman, was working *119 at a Rose Auto Store in the mall when he saw Griggs enter, wearing a ski mask on his head. Griggs, who appeared to be nervous and was wearing dark clothes, left the store 15 seconds after entering it.
Robert Wade, Griggs' barber, was approached by Griggs in a nearby parking lot at about 4:30 p.m. Griggs asked Wade for a ride home, and Wade agreed to provide one. Griggs asked Wade to stop at Angela Addison's home. Griggs offered Addison $50 to allow him to stay at her house, which she refused. She saw him holding a gun as he left.
Meanwhile, police arrived at the scene of the murder. One deputy noticed that the lining of Schiff's front trouser pocket had been turned inside out. A five dollar bill was found next to the victim in a pool of his blood. A footwear impression was located in the center-most portion of the pool of blood. In Schiff's store several chairs were found overturned, and other items were strewn across the floor. The police also found a hole in the front window, which appeared to have come from a bullet shot from within the store. Five shell casings were found inside near the front door.
The police investigation developed Griggs as a suspect, and a SWAT team went to Griggs' home to arrest him. A gun found in the attic of the house was identified as the murder weapon. The shoes that the defendant was wearing when he was arrested were found to be a probable match with the sneaker imprint in the pool of blood at the scene. Blood on the shoes was found to be similar to the victim's blood.
At trial, the victim's son testified that the store where his father died was a family owned business which mainly sold on credit to those who could not otherwise qualify. Customers would come in and pay on their accounts in cash. On the day of the murder, approximately thirty minutes before the crime, just as the son was leaving the store, he gave his father $150. The victim did not use a wallet but kept business money in his pocket.
Griggs had an alibi defense. He asserted that he was having stereo equipment installed in a friend's car at the time of the shooting. The owner of the car audio store in Miami testified that Griggs and a friend were at his store, verified by a sales receipt showing a purchase at 2:47 p.m.
The jury found Griggs guilty of first degree murder and robbery with a firearm. Following a penalty phase hearing, the jury recommended imposition of a sentence of life imprisonment without the possibility of parole.
On appeal, Griggs argues that the state failed to exclude every reasonable hypothesis of innocence in this circumstantial evidence case. While Griggs did not make this argument below, it is without merit in this case. In State v. Law, 559 So.2d 187, 188 (Fla.1989), the supreme court held that:
[w]here the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence. The question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine, and where there is substantial, competent evidence to support the jury verdict, we will not reverse.
(Citations omitted). The court went on to discuss the process of analysis in such a case:
[T]he state is not required to "rebut conclusively every possible variation" of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events. See Toole v. State, 472 So.2d 1174, 1176 (Fla. 1985). Once that threshold burden is met, it becomes the jury's duty to determine whether the evidence is sufficient *120 to exclude every reasonable hypothesis of innocence beyond a reasonable doubt.
Id. at 189 (citation omitted). In Barwick v. State, 660 So.2d 685, 695 (Fla.1995), cert. denied, 516 U.S. 1097, 116 S.Ct. 823, 133 L.Ed.2d 766 (1996), the court reiterated that the state's burden was only to offer evidence inconsistent with the defendant's theory of innocence: "[T]he State need not conclusively rebut every possible variation of events which could be inferred from [the defendant's] hypothesis of innocence. Whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to decide." (emphasis in original) (citations omitted). See also Arroyo v. State, 705 So.2d 54, 56 (Fla. 4th DCA 1997).
It is clear that the state met its burden in this case. The defendant's theory of evidence was that he was not at the crime scene when the shooting occurred, but was in Miami having stereo equipment installed in a friend's car. The eyewitness identification of Griggs by other store owners at the time of the murder, the probability of the victim's blood on Griggs' shoe, and the discovery of the murder weapon hidden in Griggs' residence all are inconsistent with his alibi.
As to the state's theory of premeditation, the circumstantial evidence was sufficient to prove premeditation. Premeditation is often impossible to prove by direct testimony and must be inferred from the circumstances surrounding the homicide. See Ross v. State, 474 So.2d 1170, 1174 (Fla.1985). The supreme court has listed some of the circumstances from which premeditation can be inferred:
[e]vidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted. It must exist for such time before the homicide as will enable the accused to be conscious of the nature of the deed he is about to commit and the probable result to flow from it in so far as the life of his victim is concerned. No definite length of time for it to exist has been set and indeed could not be.
Larry v. State, 104 So.2d 352, 354 (Fla. 1958) (citations omitted). In the instant case, there appeared to be a struggle inside the store, and the victim obviously exited the store because his body was outside the store when found. Griggs used a semi-automatic weapon, firing five shots at the victim, wounding him three times in the back of his body, one being fatal. There were at least a few moments during which the defendant could have been conscious of what he was doing. See Buckner v. State, 714 So.2d 384, 387 (Fla.1998). From the evidence, there appears to have been a continual attack, with the shots being fired at a very close distance. This evidence is inconsistent with a lack of premeditation.
Similarly, the state produced evidence inconsistent with the defendant's theory that an armed robbery did not occur because no money was missing. The victim's son had given the victim $150 within thirty minutes before the incident occurred. The victim's usual custom was to place the money in his pocket. The eyewitnesses, the evidence of the victim's blood on Griggs' shoes, and his possession of the murder weapon all place Griggs at the scene of the crime. When the police officer found the victim's body, one pocket was inside out and a five dollar bill was close to the body.[1] Griggs was seen with money in his hand and with a gun very shortly after the incident. Recognizing that the state is not required to conclusively rebut every possible variation of events *121 which can be inferred from the evidence, see Law, 559 So.2d at 189, we conclude that the state introduced evidence inconsistent with the defendant's theory that no money was missing. The victim was given $150 just before Griggs appeared and shot the victim; the victim's pocket was pulled out and only a $5 bill was found next to the body after Griggs left. See Atwater v. State, 626 So.2d 1325, 1328 (Fla.1993), cert. denied, 511 U.S. 1046, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994). These facts are inconsistent with his theory that no robbery occurred and are sufficient to prove that Griggs committed an armed robbery of the victim when he shot him.
Because the state met its burden of proof to withstand a motion for judgment of acquittal, the appellant's conviction is affirmed in all respects.
DELL and GUNTHER, JJ., concur.
NOTES
[1] The defense theorized at trial that the victim's son did not give his father $150 because it was not accounted for in the day's business transactions. To that extent, the credibility of the son's testimony is clearly a jury question.