758 So.2d 1271 (2000)
Marcos MILLIAN, Appellant,
v.
STATE of Florida, Appellee.
No. 4D98-3756.
District Court of Appeal of Florida, Fourth District.
June 7, 2000.
*1272 Richard L. Jorandby, Public Defender, and Joseph R. Chloupek, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.
DELL, J.,
Marcos Millian appeals his convictions for first degree murder and armed burglary. He contends that the trial court erred by failing to grant his motion for judgment of acquittal and by admitting evidence concerning an automobile registered to his mother. We affirm.
On January 29, 1996 at approximately 11:30 a.m., appellant entered a Cellular Concepts store with another man and asked to use the restroom. Store employee Jarcey Rodriguez told them the store had no public restroom and the men said they would return. Approximately twenty to thirty minutes later they returned, and appellant asked Rodriguez whether he could activate service for a cellular phone. Rodriguez replied that he could and gave appellant a credit application. After appellant completed the application, Rodriguez began entering the information on the computer. While he did so, appellant walked to a gate separating the retail area from the employee area located behind a counter and the gate. He rattled the gate, displayed a semi-automatic gun, and instructed Rodriguez to lie on the floor.
Testimony and photographs in evidence reveal that the store is divided into two areas: the retail sales area and the employee area. The employee area is separated from the retail area by a counter just above waist-high, which completely surrounds the area. The employee area contains computers, a cash register, and store merchandise; and the area extends from behind the counter back into a hallway containing employee offices. There is only one point of ingress and egress from the sales area: a waist-high gate which is latched by a slide-bolt lock. Rodriguez testified that this gate always remained latched.
While Rodriguez lay face-down on the floor, the man who accompanied appellant held a gun pointed from across the counter. Appellant entered the employee area through the gate and walked down the hallway toward the office of victim Sedric Houston, the store manager. From his position, Rodriguez could not observe the men. He heard the front door chime and the other perpetrator say that the employees had "stepped out" and would be back in five to ten minutes. Rodriguez then heard "pounding like if stuff was being banged around in the back" of the store "kind of like bouncing around like stuff being hit." He heard someone other than the victim curse, a shot fired, then the front door opening, a short pause, and the front door opening again. As he began to *1273 rise to his knees, he heard at least two more shots and saw appellant run out. Rodriguez then pressed the store's panic button to summon the police. He saw the victim lying face-down on the floor of the back hallway outside his office.
Tony Joseph, an Airborne Express employee, testified that he entered the store at approximately noon. He heard "stumbling" from the back of the store that he described as "[l]ike fighting, fighting going on in the back, falling down, all the banging noise in the back." Joseph then heard three fast gunshots, and he "duck[ed] down and head[ed] to the door." Once outside the store, Joseph ran; but he looked back and saw two men, including the one who had spoken to him, getting into a late model, white Cadillac.
Charlie Zegarra, owner of the store next to Cellular Concepts, also testified,
I hear like somebody fall off from the stepladder or something, but I wouldn't say that because it started a little ruffling on it like somebody was fighting on it. So that stop[ped] ... and I hear boom, boom, and then after about three seconds, five seconds, another boom, so I ran out.
He saw a man matching appellant's description get into a late model, white Cadillac. Zegarra testified that he shouted to Rodriguez what he saw of the Florida license tag on the car. The State entered into evidence a piece of paper on which Rodriguez had written "L559." The State later presented a certified copy of registration for a vehicle owned by appellant's mothera beige Cadillac with the license tag LLS-29N.
The victim died of his injuries, which included a "through and through" gunshot wound to the left wrist and a gunshot wound to the mid- to upper-back. Both shots were delivered from close range. The State's forensic pathologist characterized the hand wound as defensive and stated that the bullet in the victim's back lacerated his aorta and lung before lodging in his thigh, causing the victim's death. The victim also had abrasions on his elbow, knee, and hand. The crime scene technician testified that he found spent projectiles in the north wall of the office, the west wall of the shipping room, and the east wall of the storage closet, which the diagram of the scene reflects as three different directions from the hallway.
Appellant first challenges the sufficiency of the evidence to sustain his conviction for armed burglary. He argues that because the Cellular Concepts store was open to the public at the time he entered, section 810.02 of the Florida Statutes provides him a complete defense. Section 810.02 states: "`Burglary' means entering or remaining in a structure or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public...." § 810.02(1), Fla. Stat. (1995). In Miller v. State, 733 So.2d 955 (Fla. 1998), the supreme court held that "if a defendant can establish that the premises were open to the public, then this is a complete defense." Id. at 957 (approving Collett v. State, 676 So.2d 1046, 1047 (Fla. 1st DCA 1996), and Ray v. State, 522 So.2d 963, 967 n. 6 (Fla. 3d DCA 1988)).
The State argues that we should follow Dakes v. State, 545 So.2d 939 (Fla. 3d DCA 1989), Johnson v. State, 737 So.2d 555 (Fla. 1st DCA 1999), and Thomas v. State, 742 So.2d 326 (Fla. 3d DCA 1999). In Dakes, the appellant entered the stockroom of a retail store during business hours. 545 So.2d at 940. The stockroom door was closed but unlocked, and had two signs: "authorized personnel only" and "associates only." Id. The Third District held that "although the store itself was open to the public, the closed storeroom to which access was clearly restricted was not part of the premises open to the public, within the scope of section 810.02." Id.
Likewise, in Johnson, the First District affirmed the appellant's conviction for burglary despite the fact that the convenience store was generally open to the public. 737 So.2d at 557. The court concluded *1274 that because the appellant accessed the cash register from an area behind the counter after having been informed he was not permitted there, he entered an area which was not "open to the public" within the meaning of section 810.02. Id. at 556.
In Thomas, the Third District affirmed the appellant's conviction for burglary of a hotel where, although the hotel lobby was open to the public, the appellant accessed an area off-limits to the public. 742 So.2d at 326. The court concluded that

Miller is controlling only in cases where the purported burglary occurred in an area "open to the public." Thus, Miller is inapplicable here because Thomas entered (through fraud) an area not open to the public (the manager's office) with the intent to commit an offense (theft) therein.
742 So.2d at 327.
Recently, the Florida Supreme Court cited to Miller in State v. Laster, 735 So.2d 481 (Fla.1999), and commented that it found no merit to the State's argument that "the area behind the counter" was not open to the public. However, the opinion in Laster does not disclose whether the area behind the counter was or was not open to the public. Therefore, Laster does not appear to overrule Dakes, Johnson, or Thomas.
Here, although the store itself was generally open to the public, it was divided into two sectionsthe public section and the section not open to the public and controlled by a latched gate. This area also extended into a hallway and an office where the victim was shot. The burglary occurred when the appellant opened the latched gate, went down the hall, and went into the victim's office, which clearly was not open to the public. We agree with the reasoning in Dakes, Johnson, and Thomas, and affirm appellant's conviction for armed burglary. See also Busby v. State, ___ So.2d ___, 2000 WL 172860 (Fla. 4th DCA Feb.16, 2000).
Next, we hold that the record contains sufficient evidence to sustain appellant's conviction of premeditated murder. In Griggs v. State, 753 So.2d 117 (Fla. 4th DCA 1999), the proprietor of a Hallandale furniture store died of gunshot wounds inflicted in the course of a robbery. The evidence established that the victim was shot three times in his back, and five shell casings from a semi-automatic weapon were found inside the store near the front door. The store was in disarray, indicating a struggle; and the victim fell to the ground outside the store, suggesting that he attempted to exit before being shot from behind. The evidence also showed that the shots were fired at close range. We concluded in Griggs that "[t]here were at least a few moments during which the defendant could have been conscious of what he was doing."
In Griggs, this court relied on the supreme court's guidance on premeditation set forth in Larry v. State, 104 So.2d 352, 354 (Fla.1958):
Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted. It must exist for such time before the homicide as will enable the accused to be conscious of the nature of the deed he is about to commit and the probable result to flow from it in so far as the life of his victim is concerned. No definite length of time for it to exist has been set and indeed could not be.
753 So.2d 117.
In this case, the facts show multiple shots from a semi-automatic gun; no evidence of provocation by the victim; one defensive wound and one wound inflicted in the victim's back; evidence of a struggle; and a pause before the shots were fired, which would have enabled appellant to be conscious of his actions. The evidence *1275 is sufficient to sustain appellant's conviction for first degree premeditated murder in violation of section 782.04(1)(a)(1), Florida Statutes (1995). We also hold, based on our affirmance of his conviction of armed burglary, that appellant's conviction for first degree murder may also be affirmed as a felony-murder.
Appellant has failed to show reversible error in the trial court's admission of testimony concerning his mother's vehicle. Tony Joseph and Charlie Zegarra testified they observed the perpetrators in a white Cadillac, and Zegarra called out the partial license tag "L559" as the car drove away from the scene. The State introduced a certified copy of vehicle registration for a beige Cadillac with license tag LLS-29N, registered to the last name Millian at the address where police executed a search warrant for items belonging to appellant. The vehicle and residence belong to appellant's mother. We hold that the testimony of the two witnesses furnished a sufficient predicate for admission of the evidence showing similarity of the vehicles and their tags. A trial court has wide discretion when determining the admissibility of evidence, and exercise of this discretion will not be reversed except upon a showing of abuse. Medina v. State, 466 So.2d 1046, 1050 (Fla.1985).
We affirm appellant's conviction for armed burglary and first degree murder.
AFFIRMED.
WARNER, C.J., and GUNTHER, J., concur.