PATTERSON, Chief Judge.
Anthony Graham appeals from his judgment and sentences for two counts of first-degree murder, attempted murder, and possession of a firearm by a convicted felon. He argues that the State’s evidence was insufficient to prove that he premeditated the murders of his mother and cousin and the attempted murder of his mother’s boyfriend. Because we agree that the evidence is insufficient to support the convictions for first-degree murder, we reverse and remand to the trial court to reduce the convictions to second-degree murder.
Graham lived in a house with his mother, Gloria White, her boyfriend, Johnnie Jones, and his three-year-old cousin, Richard Hinson, Jr. On November 18, 1998, as Jones returned home from work, he saw Graham peeking through the blinds of the master bedroom. Jones walked past Graham into the house. After taking a few steps, he heard a gunshot and felt a sting in the back of his neck. He attempted to run out the back door but found that it was locked. He turned and saw Graham behind him in the kitchen. Graham fired a second shot which grazed Jones’ forehead. Jones charged toward Graham and was shot a third time in the groin. Graham ran out the side door. Deputies arrived at the residence and discovered White’s body and the body of a young child under a blanket in the master bedroom. Both were killed by gunshots to the head.
Meanwhile, Graham telephoned 911 and reported, “My momma’s boyfriend, my momma’s boyfriend had shot her and he shot a kid and, and, and, he was shooting at me.” He was asked to stay where he was until the police arrived. He replied that he was going to his father’s house in Lee County and hung up. Later that night, Graham was arrested in Lee County after being in an automobile accident while driving his mother’s car. On the way to the sheriffs department, Graham did not make any statements which the arresting officer considered bizarre or strange.
Detective Ross interviewed Graham in Lee County on the night of the homicides. Graham described Jones as an abusive man who had beaten Graham’s mother. He said Jones shot his mother and tried to shoot him. He never mentioned what happened to the little boy. Graham denied shooting at or killing anyone.
Mike Johnson, Graham’s father, testified that Gloria White called him on the morning of November 18, 1998. During that conversation, he heard Graham ask his mother several times if he could use her car. She refused each time. That evening Graham called him and said that White had been shot by her boyfriend.
Graham was charged by indictment with two counts of first-degree murder, attempted first-degree murder, possession of a firearm by a convicted felon, and grand theft of a motor vehicle. He entered pleas of not guilty and not guilty by reason of insanity. The case proceeded to nonjury trial. At the close of the State’s case, the defense moved for a judgment of acquittal. With respect to the charges of first-degree murder, the defense argued a complete absence of evidence related to premeditation. The trial court denied the motion. Thereafter, the court found Graham not guilty of grand theft of a motor vehicle and guilty of the remaining counts.
During the inquiry into Graham’s sanity, several psychologists and psychiatrists gave varying opinions on Graham’s mental condition. The trial court found that although Graham did have a mental disease, at the time of the offenses, Graham knew what he was doing, he knew it was wrong, and he knew the consequences of his actions. The court adjudicated Graham *17 guilty of both first-degree murders and the attempted murder and sentenced him to concurrent sentences of life without parole for those offenses. The court also adjudicated Graham guilty of possession of a firearm and imposed a concurrent fifteen-year prison term for that count.
On appeal, Graham again argues that the State failed to prove premeditation. Premeditation may be inferred from circumstantial evidence including: the nature of the weapon used, the presence or absence of provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the manner of the wounds inflicted. Holton v. State, 573 So.2d 284 (Fla.1990). The State points to evidence that Graham: was jealous of Jones and the attention his mother gave to his young cousin; was angered by his mother’s refusal to let him drive her car; and was upset by his mother’s request that he find another place to live. The State also presented evidence that White and Jones did not own a firearm; thus, Graham obtained the firearm on his own. Further, the State suggests that the number and the characteristics of the gunshot wounds support the conclusion of premeditation.
However, the record also shows that Graham never threatened his mother, cousin, or Jones. In fact, he tended to ignore his cousin and Jones completely. Further, Graham’s father testified that when talking to White and Graham, Graham did not seem upset or angered that White had denied him the use of her car. There was no evidence of a confrontation between Graham and his mother or signs of struggle at the crime scene. There was no evidence showing when or where Graham may have obtained the weapon.
While the State may prove premeditation by circumstantial evidence, the evidence relied on must be inconsistent with every other reasonable inference. Coolen v. State, 696 So.2d 738 (Fla.1997). For example, in Mungin v. State, 689 So.2d 1026 (Fla.1995), the State argued that the killing was premeditated based on evidence that the victim was shot in the head at close range and that the defendant procured the murder weapon in advance and had used it before. The supreme court reversed the trial court’s denial of the motion for judgment of acquittal on the ground that the circumstantial evidence was also consistent with a killing that occurred at the spur of the moment, as there were no statements or witnesses indicating that the defendant intended to kill the victim.
In Kirkland v. State, 684 So.2d 732 (Fla. 1996), the victim was found with her throat slit in a house where she lived with Kirkland and two other people. Kirkland, like Graham, suffered from mental illness. The court found that there was no suggestion that Kirkland exhibited, mentioned, or possessed an intent to kill the victim at any time prior to the actual homicide. There were no witnesses to the events immediately preceding the homicide and no evidence suggesting that Kirkland made special arrangements to obtain a murder weapon. The court held that the evidence was insufficient to support a conviction for first-degree murder and reduced the conviction to second-degree murder. See Norton v. State, 709 So.2d 87 (Fla.1997) (holding that, where the victim was discovered lying face down in an open field with a gunshot wound to the back of her head, there were no signs of a struggle, and no injuries indicating defensive wounds, there was a complete absence of evidence to support a finding of premeditation).
In this case, the victims’ bodies were discovered on the bedroom floor; each had been shot in the head. There was no *18 evidence regarding what happened immediately prior to the homicides. While the State’s evidence sufficiently proves that Graham committed the homicides, there was no evidence to show that Graham had a premeditated design or intent to kill. Thus, Graham’s convictions for first-degree murder must be reduced to convictions for second-degree murder. See Rivera v. State, 761 So.2d 423 (Fla. 2d DCA 2000).
The evidence of premeditation as to the attempted murder of Jones is more compelling. The record shows that Graham was waiting to ambush Jones as soon as he came in the house. Graham chased Jones through the house, firing multiple shots, without having been provoked or threatened in any way. Evidence of a continual attack has been held to indicate premeditation. Griggs v. State, 753 So.2d 117 (Fla. 4th DCA 1999).
Accordingly, we affirm Graham’s convictions for attempted first-degree murder and possession of a firearm by a convicted felon. We reverse his convictions for first-degree murder and remand for resentenc-ing as convictions for second-degree murder.
Affirmed in part, reversed in part, and remanded.
WHATLEY and STRINGER, JJ„ concur.