959 So.2d 810 (2007)
Gus FENNELL, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-1871.
District Court of Appeal of Florida, Fourth District.
July 5, 2007.
Carey Haughwout, Public Defender, and Paul E. Petillo, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Laura Fisher Zibura, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
The appellant challenges his conviction for first-degree murder, arguing that the state failed to prove premeditation. While admitting that evidence of gunshot wounds and incriminating statements were arguably consistent with a premeditated design, he maintains that the state did not exclude every reasonable hypothesis of innocence. We disagree, concluding that the *812 state's evidence was sufficient to support premeditation to the exclusion of his hypothesis of innocence. We therefore affirm.
The appellant, Gus Fennell, and the victim, Ernestine Monds, lived together and were romantically involved for several years. Their relationship was difficult. Monds would drink, and the two would argue. Monds threw Fennell out of her apartment several times in the past. Approximately a month before the murder, Monds made Fennell move out again, and neighbors, Darryl Horne and Yolanda Price, gave Fennell a ride to a rooming house. On the way, he told them, "If I ever get back there, I am going to kill this bitch." Fennell later moved back into the apartment.
The week before the murder, Monds was drinking and arguing with Fennell at the apartment. Linda Lester, a close friend of Monds, was also present. The argument got physical when Monds attempted to kick Fennell, and Fennell ended up tripping Monds, causing her to fall. He helped her up, but they continued to argue. Fennell then reached under the couch and pulled out a gun, pointing it directly at Monds. Lester intervened and told the appellant, "don't do it . . . not in front of me." After a brief moment, Fennell then put the gun away. While he drew the gun on Monds, he did not verbally threaten her.
On the night of the murder, Lester, Horne, and Price were partying outside Monds' apartment. Monds did not join them. At approximately 6:00 p.m. Fennell arrived, and Monds left. Around 7:30 p.m. Lorena Jenkins, Monds' sister, arrived, and Monds was not there. Fennell told Jenkins that he needed someplace to go because Monds was going to put him out of the apartment again. Jenkins and a friend gave Fennell a ride to the gas station so that he could get some beer. They dropped Fennell off at Monds' apartment at about 8:30 or 8:45 p.m.
Lester saw Monds return around 9:00 p.m. She went into the apartment, and Lester then heard gunshots, but she was not sure where they came from. A few minutes later she saw Fennell putting a sheet over the window. He exited the apartment and asked for a cigarette. Lester asked him if everything was all right, and Fennell said, "Everything all right now." He told the group outside that he was going to the store.
After Fennell left the apartment, Lester felt something was wrong because Monds had not come out of the apartment. Another neighbor knocked on the door but received no answer. The group called the police who came and broke down the door, discovering Monds lying face down in a pool of blood. In one hand was a cell phone and in the other was a phone handset. Monds was dead. None of the state's witnesses testified that the murder scene looked like a struggle had occurred.
The police arrested Fennell at a gas station shortly after the shooting. The arresting officer handcuffed Fennell and had him sit down on the curb. Fennell then told the officer that "the gun is in the car." The bullets recovered from Monds' body were found to have been fired from that gun. A test of the gun revealed that it took a heavier force to pull the trigger than some handguns.
Police obtained a swabbing from the grip and trigger of the gun found in Fennell's car. The medical serologist found a weak DNA profile from the swabbing. That profile matched Monds' DNA, most likely from her skin cells. To transfer skin cell DNA from a person to an object would require some sort of force or friction. The expert also noted that DNA *813 could remain on an object for weeks or months, depending upon conditions.
Dr. Stuart Graham, the medical examiner, conducted the autopsy on Monds. Monds sustained four injuries to her head and neck. The autopsy also revealed that Monds' blood alcohol level was 0.22. The injuries included three gunshot wounds and a fourth wound caused by some type of projectile; however, Dr. Graham was not sure exactly what caused the fourth injury. The first two shots were not fatal. One bullet entered Monds' right cheek and lodged in her left cheek after passing through the back of her nose. Another gunshot wound entered in the back of her head, slightly above the ears. The bullet was lodged within her skull but it did not go all the way through the skull. The fatal gunshot wound came from a bullet that penetrated the back of her neck. This bullet penetrated Monds' skull, then penetrated her brain stem, and finally lodged itself in the brain near the cerebellum. The absence of soot or stippling surrounding the gunshot wounds indicated that all of the shots were fired from a minimum distance of eighteen inches. Monds could not have shot herself in the back of the head, yet one non-fatal shot and the fatal shot entered her body through the back of her head. Dr. Graham also concluded that there was no evidence that the incident was a close-contact shooting.
The state rested its case after the medical examiner's testimony. Fennell moved for a judgment of acquittal on the issue of premeditation, which the trial court denied. Fennell presented witnesses expanding on Monds' drinking, including the fact that she became aggressive when she drank. Fennell then testified that Monds and he frequently argued, and she threw him out of the apartment approximately once a month. He admitted fighting with her a week before the murder but denied pulling a gun. Instead, he said he retrieved the gun from under the couch and put it in a drawer.
On the night of the murder, Monds and Fennell argued about bills. She told him to get out and threw his suitcase against the door. When he pleaded to stay, she left the room and returned with a gun. She told him to get out, or she would shoot him. Just then she was distracted by a sound, and he grabbed for the gun, trying to remove it from her hand. She did not let go, and the gun went off several times as they both fell to the floor. He panicked and left the house.
After the presentation of all the evidence, and a denial of a renewed judgment of acquittal on the first-degree murder charge, the jury found Fennell guilty of first-degree murder. The trial court entered judgment and sentenced Fennell to life in prison. This appeal follows.
Fennell argues that the state failed to prove premeditation, and the state's circumstantial evidence was not inconsistent with his reasonable hypothesis of innocence that gunshot wounds were inflicted during an argument and struggle. We disagree, as the state presented evidence that was sufficient for the jury to find premeditation, where the gunshot wounds were inconsistent with a close-contact fight, and where Fennell had expressed an intent to kill Monds in the past and had actually drawn a gun on her the week prior to the murder.
The unlawful killing of a human being when perpetrated from a premeditated design to effect the death of the person killed or any human being constitutes murder in the first degree. § 782.04(1)(a)1., Fla. Stat. Premeditation is the essential element that distinguishes first-degree murder from second-degree murder. See Green v. State, 715 So.2d *814 940, 943 (Fla.1998). "Premeditation can be formed in a moment and need only exist `for such time as will allow the accused to be conscious of the nature of the act he is about to commit and the probable result of that act.'" DeAngelo v. State, 616 So.2d 440, 441-42 (Fla.1993) (quoting Asay v. State, 580 So.2d 610, 612 (Fla.), cert. denied, 502 U.S. 895, 112 S.Ct. 265, 116 L.Ed.2d 218 (1991)).
Where the element of premeditation is sought to be established by circumstantial evidence, the evidence must be inconsistent with every other reasonable inference. Cochran v. State, 547 So.2d 928, 930 (Fla.1989). Premeditation may be inferred from:
the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed and the nature and manner of the wounds inflicted. It must exist for such time before the homicide as will enable the accused to be conscious of the nature of the deed he is about to commit and the probable result to flow from it insofar as the life of the victim is concerned.
Jackson v. State, 575 So.2d 181, 186 (Fla. 1991) (quoting Sireci v. State, 399 So.2d 964, 967 (Fla.1981)). A jury is not required to believe a defendant's version of events, however, when the state introduces conflicting evidence. DeAngelo, 616 So.2d at 442.
The state proved that Fennell had threatened to kill Monds a month before the actual murder. The week prior to the murder he drew a gun on Monds during an argument. Lester intervened, telling Fennell he could not shoot Monds. On the night of the murder, Fennell shot Monds three times, twice in the back of the head. None of the shots constituted close-contact shots, thus negating Fennell's version that the two were fighting over the gun when it went off. Furthermore, Monds was found with two telephones in her hands, also completely inconsistent with Fennell's hypothesis of innocence that the shooting was a result of a struggle over the gun. The fatal shot occurred to the back of Monds' head from a distance of at least eighteen inches. The amount of force necessary to activate the trigger pull also militated against an accidental discharge. This evidence is inconsistent with the defense's hypothesis that the shooting was a result of an argument and scuffle for the gun. Even if a scuffle occurred in which Monds had possession of the gun, the fact that Fennell shot Monds twice in the back of the head shows that those shots were not the result of a scuffle.
The cases cited by Fennell for the proposition that the state's evidence did not prove premeditation to the exclusion of his reasonable hypothesis of innocence are all distinguishable. In those cases, the state did not produce the level of circumstantial evidence present in this casenamely, the prior statements and actions showing an intent to kill, coupled with the type of wounds inflicted. For instance, in Green v. State, 715 So.2d 940 (Fla.1998), a death penalty case, the supreme court found insufficient evidence of premeditation. The state had shown that on the night of the murder the victim was intoxicated and had been fighting with her boyfriend. Earlier on the same day, Green had threatened to kill the victim "in a fit of rage." Later, Green and a friend picked her up and "did things to her." Green told a friend that "the bitch got crazy on us," and they killed her. The victim had three stab wounds but no weapon was found. She died of strangulation. The court also noted Green's low intelligence in concluding that the state's evidence did not overcome Green's theory that the murder was committed *815 without a premeditated design. In contrast, in this case, Fennell had verbally announced an intent to kill Monds a month before the murder and had pulled a gun on her the week before the murder. Secondly, the shots to the back of the head could not have been inflicted in a close-contact scuffle.
In Coolen v. State, 696 So.2d 738 (Fla. 1997), also cited by Fennell, Coolen and the victim had been with others drinking over the course of the evening when Coolen "came out of nowhere" and began stabbing the victim six times during a fight. The supreme court found evidence that the killing occurred as a result of the escalation of the fight insufficient to prove premeditation. However, unlike the present case, no prior incidents had occurred between Coolen and the victim, whom Coolen had met the night of the murder.
Although a single gunshot wound to the back of the head was considered insufficient evidence of premeditation in Norton v. State, 709 So.2d 87 (Fla.1997), in that case the state presented no evidence of prior threats or provocation between the defendant and the victim. Here, of course, there was evidence of prior threats as well as more than one gunshot wound to the back of the head.
Fennell also cites Castillo v. State, 705 So.2d 1037 (Fla. 3d DCA 1998), as supporting his claim that the evidence was insufficient to prove premeditation. There, the victim had been killed in a hotel room by a gunshot fired into the left side of her head from three feet away. Prior to the murder Castillo had physically abused the victim. The abuse included hitting her on the head with a gun. On the morning of her death, a hotel maid overheard Castillo arguing with the victim. Castillo left, and later the maid checked the room and found the victim dead on the floor. Castillo's accounts of the event to law enforcement, although inconsistent with one another, "were tales of sex, drugs, jealousy and rage." Id. at 1038. However, missing from Castillo's accounts were statements of any conscious purpose to kill the victim. Id. The Third District reversed Castillo's conviction for first-degree murder and remanded for instructions to enter judgment for second-degree murder. Although there are some similarities to this case, such as the volatile relationship between the victim and the defendant, there is substantially more evidence in this case which shows premeditation, including the prior threats to kill and the fact that the gunshots occurred to the back of Monds' head. In sum, none of the cases cited by Fennell support reversal under the facts of this case.
In addition to his challenge of the evidence proving premeditation, Fennell raises two issues with respect to the introduction of evidence. We affirm without further discussion, because even if error occurred in the challenged evidentiary rulings, it was harmless beyond a reasonable doubt.
Affirmed.
GROSS and TAYLOR, JJ., concur.