DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DAVID HARRIS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-1735

[January 22, 2020]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Samantha Schosberg Feuer, Judge; L.T. Case No. 50-2015-CF-004115-BXXX-MB.

Carey Haughwout, Public Defender, and David John McPherrin, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Jessenia J. Concepcion, Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant David Harris appeals his convictions for first-degree murder and aggravated battery evidencing prejudice. Of the several issues Appellant raises, we write to address two: (1) whether the trial court erred in denying Appellant's motion for a judgment of acquittal to the charge of first-degree murder, and (2) whether the court abused its discretion in denying Appellant's requests to redact certain portions of his statements to the police that were placed into evidence by the State. On these issues, and all others raised by Appellant, we affirm the judgment and sentence of the trial court.

**Background**

The evidence presented at trial revealed the following. On the fateful evening in question, Appellant met up with his younger brother and a friend, Austin Taggart. When later questioned by police, Appellant maintained that his plan that evening was to smoke marijuana at a park and hang out with his younger brother. Taggart, however, needed money

and intended to go "Guat hunting." Appellant testified that this term refers to robbing people of Guatemalan and Mexican ethnicity, generally on Fridays ("pay day"). Appellant claimed that only Taggart planned to go "Guat hunting" that night. Nevertheless, Appellant joined Taggart in purposefully walking towards "the numbered streets" (a predominately Hispanic neighborhood) shortly after midnight. Appellant later stated that he agreed to "tag along" with Taggart because "crazy sh*t could happen, like, Mexicans . . . to have a gun [and] we're all, like, brothers in arms, you know."

As the group neared this neighborhood, Taggart, without provocation, brutally assaulted a Hispanic man riding a bicycle. The Harris brothers did not participate in the attack but kept walking as it occurred and did not intervene or offer aid to the victim. Appellant testified that he subsequently told Taggart to "chill."

After this initial attack, Taggart picked up a piece of rebar and carried it with him. Less than a mile from where Taggart assaulted the man on the bicycle, Appellant heard Spanish music playing and encountered a group of four men speaking Spanish and drinking in a front yard. Appellant's group approached these individuals.

*A. Aggravated Battery*

Shortly after the arrival of Appellant's group, Elmer Lopez-Ramos went to a nearby shed to retrieve an axe. Appellant later told police that he thought Elmer became uncomfortable seeing Taggart armed with the rebar. According to Appellant, once Elmer returned with the axe, he touched Appellant on the shoulder with the axe despite Appellant's protest and persisted with the unwanted touching until Appellant slapped Elmer. Elmer denied ever touching Appellant, with the axe or otherwise. Both Appellant and Elmer agreed that, as Appellant approached Elmer in a belligerent manner, Elmer dropped the axe and attempted to flee. Appellant, however, reached down and grabbed a rock, or a clump of dirt containing rocks, and hit Elmer in the face with the rock(s). Appellant hit Elmer with such force that Appellant later expressed surprise that Elmer was still conscious, noting that he was "hitting full force" and it "sound[ed] like I'm hitting a freakin' brick wall with a brick." Appellant followed up the initial strike with several more punches until Elmer was able to run away from him. Appellant chased Elmer, but the latter escaped and called the police from a nearby alley. At trial, Elmer denied having acted aggressively towards Appellant or physically provoking him.

2

*B. First-Degree Murder*

After Elmer fled, Appellant picked up the discarded axe; he claimed that Elmer's brother, Onesimo Lopez-Ramos, and one of his companions had armed themselves with a pipe and a machete, respectively. An altercation ensued and Onesimo attempted to flee. This time, however, the victim did not escape Appellant, and Appellant hit Onesimo in the back of the head with the blunt side of the axe. Appellant claimed to have hit Onesimo only once and specifically denied hitting Onesimo while he lay unconscious on the ground. According to Appellant, Taggart hit Onesimo with the rebar several times as he lay on the ground and then "smashed" his head with a large rock.

The State presented forensic evidence that Onesimo died from blunt force trauma to the back of the head, and the medical examiner opined that the fatal wound was more likely caused by the axe than by a rock. The medical examiner further testified that "most of the evidence . . . compel[led him] to believe that to create that fracture, [Onesimo's] head had to have been supported"; this would mean that Onesimo was likely hit on the back of the head with the axe while lying face down on the ground. This testimony directly conflicted with Appellant's version of events as he denied hitting Onesimo with the axe while Onesimo was on the ground.

The jury convicted Appellant as charged with the first-degree murder of Onesimo and with aggravated battery evidencing prejudice as to Elmer. Appellant received a sentence of life in prison for the murder conviction and a consecutive fifteen years for the aggravated battery conviction. This appeal followed.

**Analysis**

*A. Denial of Motion for Judgment of Acquittal of First-Degree Murder*

The trial court's ruling on a motion for judgment of acquittal is reviewed de novo. *Hobart v. State*, 175 So. 3d 191, 199 (Fla. 2015); *Wiley v. State*, 60 So. 3d 588, 590 (Fla. 4th DCA 2011). "Generally, an appellate court will not reverse a conviction that is supported by competent substantial evidence." *Johnston v. State*, 863 So. 2d 271, 283 (Fla. 2003). "In moving for a judgment of acquittal, a defendant admits the facts in evidence and every conclusion favorable to the [State] that may be fairly and reasonably inferred from the evidence." *Turner v. State*, 29 So. 3d 361, 364 (Fla. 4th DCA 2010).

"The unlawful killing of a human being when perpetrated from a

premeditated design to effect the death of the person killed or any human being constitutes murder in the first degree." *Fennell v. State*, 959 So. 2d 810, 813 (Fla. 4th DCA 2007); *see also* § 782.04(1)(a)1, Fla. Stat. (2015). "Premeditation can be formed in a moment and need only exist for such time as will allow the accused to be conscious of the nature of the act he is about to commit and the probable result of that act." *Fennell*, 959 So. 2d at 814 (quoting *DeAngelo v. State*, 616 So. 2d 440, 441-42 (Fla. 1993) (internal quotation marks omitted)). "Premeditation may be inferred from circumstantial evidence including: the nature of the weapon used, the presence or absence of provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the manner of the wounds inflicted. *Graham v. State*, 793 So. 2d 15, 17 (Fla. 2d DCA 2001) (citing *Holton v. State*, 573 So. 2d 284 (Fla. 1990)).

Appellant argued below and on appeal that the State failed to prove premeditation with respect to the death of Onesimo because Appellant did not arrive at the gathering with a weapon and never expressed an intent to kill anyone. However, Appellant acknowledged chasing and hitting Onesimo with an axe. While Appellant contends that Taggart struck the fatal blow with a rock, the medical examiner's testimony reflected that the fatal blow most likely resulted from the axe striking the victim's head while he lay face down on the ground. Moreover, during his interview with the police, Appellant admitted to killing Onesimo (albeit, "in self-defense"). Thus, competent substantial evidence existed to submit the question of premeditation to the jury, and the trial court did not err in denying Appellant's motion for judgment of acquittal.

*B. Denial of Appellant's Request to Redact Portions of His Statements to Police*

"The standard of review for admissibility of evidence is abuse of discretion. However, a trial court's discretion is limited by the rules of evidence." *Orton v. State*, 212 So. 3d 377, 378 (Fla. 4th DCA 2017) (quoting *Nardone v. State*, 798 So. 2d 870, 874 (Fla. 4th DCA 2001)).

In his initial brief on appeal, Appellant challenges, on the basis of relevancy, the trial court's denial of his motion to redact from his statements to the police all references to Taggart's prior assault of the Hispanic man on the bicycle and his own references to "Guat hunting." However, in his amended motion to redact statements filed with the trial court, Appellant relied exclusively upon section 90.403, Florida Statutes ("Exclusion on grounds of prejudice or confusion") and did not argue relevancy grounds under section 90.401, Florida Statutes. Nor did Appellant raise a specific relevancy objection at the hearing on the motion.

Thus, the State argues that Appellant's relevancy argument was not properly preserved for appeal.

We agree with the State's lack-of-preservation argument. *See Morrison v. State*, 818 So. 2d 432, 446 (Fla. 2002) ("In order to preserve the issue for appellate review, a party must have made the same argument to the trial court that it raises on appeal."). Nonetheless, whether addressed under section 90.401 or 90.403, Appellant's claim would fail. His primary contention is that only Taggart was "Guat hunting" and that Appellant had no interest in participating that evening. From this proposition, Appellant argues that evidence of the evening's initial assault (on the bicyclist) and Appellant's "Guat hunting" statements had little if any probative value, and any probative value was substantially outweighed by the risk of unfair prejudice.

Appellant's argument conveniently overlooks the fact that the State charged Appellant with aggravated battery of Elmer on the basis that this attack was racially motivated. *See* § 775.085(1)(a), Fla. Stat. (2018). Furthermore, the State introduced evidence at trial which would allow a reasonable jury to infer that Appellant was not merely an innocent bystander that night but was in fact involved in Taggart's "Guat hunt" and that Appellant's acts of violence towards Elmer and Onesimo were racially motivated. As noted above, Appellant told police that he went with Taggart, essentially as backup, because of what could happen ("like, Mexicans . . . to have a gun"), and because he and Taggart were "like, brothers in arms . . . ."

The State's evidence showed that Appellant and his brother saw Taggart assault a Hispanic man on his bike and kept walking instead of intervening or rendering aid. Appellant was also aware that Taggart armed himself with a piece of rebar as the group continued towards a neighborhood known to be predominately Hispanic. The State's evidence moreover indicated that Onesimo and the rest of his companions were attacked from behind as they ran and that they all sustained various injuries while Appellant and his group went unscathed.

In short, the State presented evidence that the victims of Taggart's and Appellant's assaults were targeted because of their ethnicity/race. The contested evidence was therefore relevant and, although prejudicial to Appellant's defense, not unfairly so. Thus, the trial court did not abuse its discretion by allowing the State to introduce evidence of Taggart's initial assault and Appellant's own statements about "Guat hunting."

## Conclusion

The trial court's statement at sentencing that "[w]hat happened in this case was absolutely heinous and horrific" is an apt description of this tragic and senseless course of events. The record demonstrates that the State produced competent substantial evidence that both crimes were racially motivated such that the trial court did not abuse its discretion in finding that Appellant's statements to the police were introduced in conformity with sections 90.401 and 90.403, Florida Statutes. Moreover, the trial court properly denied Appellant's motion for judgment of acquittal on the first-degree murder charge. As such, we affirm the trial court on these issues, as well as all other issues raised on appeal.

*Affirmed.*

LEVINE C.J., and MAY, J., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***