616 So.2d 440 (1993)
Dominick DEANGELO, Appellant,
v.
STATE of Florida, Appellee.
No. 78499.
Supreme Court of Florida.
April 8, 1993.
*441 James B. Gibson, Public Defender, and Christopher S. Quarles, Asst. Public Defender, Chief, Capital Appeals, Seventh Judicial Circuit, Daytona Beach, for appellant/cross-appellee.
Robert A. Butterworth, Atty. Gen. and Barbara C. Davis, Asst. Atty. Gen., Daytona Beach, for appellee/cross-appellant.
PER CURIAM.
Dominick DeAngelo appeals his conviction of first-degree murder and sentence of death. We have jurisdiction under article V, section 3(b)(1) of the Florida Constitution.
Dominick DeAngelo and his wife, Joy, met the victim, Mary Anne Price, in the spring of 1990. Price and Joy DeAngelo worked together as dancers at various bars in central Florida. Dominick and Joy moved into Price's home with their infant son and lived there for a short time, then rented a trailer. Price moved in with the DeAngelos and lived with them up to the time of her death. There were continuous conflicts and arguments between Price and Dominick over Price's failure to pay rent, her drinking and drug use, and her promiscuous life-style.
At around 5 a.m. on April 22, 1990, the morning of the murder, Joy got home from work and had a short conversation with Price, then went to sleep in her bedroom. A short time later, Dominick came into the room, woke Joy, and told her that Price had lied to him for the last time. Dominick had a pair of socks over his hands. He then took Joy into Price's room and showed her Price's body, lying on the floor on a sleeping bag. After Dominick spent some time going through Price's belongings, Dominick and Joy left the trailer to go to a flea market, where Dominick shopped for machetes and chain saws. While Dominick was otherwise occupied, Joy flagged down a sheriff's deputy and told him what happened.
In his subsequent confession to the police, Dominick stated that he went into the bedroom to talk to Price, got into an argument with her, and grabbed her by the chin to shut her up. Dominick said the next thing he knew Price was just lying there.
Price had ligature marks around her neck as well as scrapes and bruises on her head. Her death was caused by asphyxiation due to combined manual and ligature strangulation.
Dominick DeAngelo was convicted of first-degree murder, and the jury recommended a sentence of death by a vote of seven to five. The trial court followed the jury's recommendation.
DeAngelo's only argument relating to the guilt phase of his trial is that the trial court erred in denying his motion for judgment of acquittal of first-degree murder. DeAngelo argues that the State failed to prove premeditation and that the evidence proves at most second-degree murder.
Premeditation can be formed in a moment and need only exist "for such time as will allow the accused to be conscious of the nature of the act he is about to commit and the probable result of that act." Asay v. State, 580 So.2d 610, 612 (Fla.), cert. *442 denied, ___ U.S. ___, 112 S.Ct. 265, 116 L.Ed.2d 218 (1991). According to DeAngelo's confession, he grabbed Price by the chin to shut her up and the next thing he knew she was dead  she was killed in a blind rage during an argument. However, a jury is not required to believe a defendant's version of events where the State has produced conflicting evidence. See, e.g., Holton v. State, 573 So.2d 284, 289-90 (Fla.), cert. denied, ___ U.S. ___, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991). Here, the State provided ample evidence to contradict DeAngelo's contention that the killing was committed in a blind rage. The medical examiner testified that DeAngelo would have had to choke Price for five to ten minutes to kill her. Price was not just strangled manually, but was also choked with a ligature. Further, Joy described an incident which occurred a week before the murder where DeAngelo went into Price's room to kill her, then backed out.
A court should not grant a motion for judgment of acquittal unless "there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law." Taylor v. State, 583 So.2d 323, 328 (Fla. 1991). This is obviously not the case here, and the trial court did not err in denying DeAngelo's motion. We find that there is substantial competent evidence to support the jury verdict of first-degree premeditated murder.
DeAngelo's first argument relating to the penalty phase of his trial is that the death penalty is inappropriate in this case. In sentencing DeAngelo to death, the trial court found only one aggravating factor, that the murder was cold, calculated, and premeditated.[1] Initially, DeAngelo argues that even this aggravator should not have been found.
To prove that a murder was cold, calculated, and premeditated, the State must demonstrate that the defendant had "a careful plan or prearranged design to kill." Rogers v. State, 511 So.2d 526, 533 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). Here, Joy DeAngelo testified that one week before the murder took place, Dominick put socks on his hands, woke Joy, and forced her at knife point to accompany him as he went into Price's bedroom. As Price lay on the floor, passed out, Dominick instructed Joy to put a blanket over Price's face when he was ready to strangle her. Dominick stood there for a few minutes flexing his hands, then told Joy to forget it and said that if she told anyone he would kill her.
Dominick left a few days later to go out of town, and upon his return the murder took place. Dominick got his socks, as he had done the week before, and went into Price's room and strangled her both manually and with a ligature. The incident a week before the murder was obviously a dry run, and Dominick carried through with his prearranged plan a week later. Contrary to DeAngelo's argument, the evidence at trial was inconsistent with a killing consummated in an emotional frenzy or fit of rage. Rather, the evidence establishes that Dominick was fed up with Price and coldly planned to rid himself of her. While Dominick's motive may have been grounded in passion, it is clear the murder itself was contemplated well in advance. See Porter v. State, 564 So.2d 1060, 1064 (Fla. 1990), cert. denied, 498 U.S. 1110, 111 S.Ct. 1024, 112 L.Ed.2d 1106 (1991). We affirm the trial court's finding that the State did prove that this murder was cold, calculated, and premeditated beyond a reasonable doubt.
The State, filing a cross-appeal, contends that the trial court erred in failing to find that the murder was heinous, atrocious, or cruel.[2] This Court has previously stated that "it is permissible to infer that strangulation, when perpetrated upon a conscious victim, involves foreknowledge of death, extreme anxiety and fear, and that this method of killing is one to which the factor of heinousness is applicable." Tompkins v. State, 502 So.2d 415, 421 (Fla. 1986), cert. denied, 483 U.S. 1033, 107 S.Ct. *443 3277, 97 L.Ed.2d 781 (1987). Here, however, the trial court carefully considered the evidence and found that the State failed to prove beyond a reasonable doubt that Price was conscious during the ordeal. In reaching this conclusion, the trial court focused on the absence of defensive wounds, the lack of any evidence that there was a struggle, the presence of a substantial amount of marijuana in Price's system, and the medical examiner's testimony as to the possibility that at the time she was strangled Price was unconscious as a result of the pressure of the choking or as a result of a blow to her head. In certain limited circumstances where the aggravator is unquestionably established on the record and not subject to factual dispute, this Court will find an aggravator that the trial court has failed to find. See, e.g., Pardo v. State, 563 So.2d 77, 80 (Fla. 1990) (prior violent felony aggravator), cert. denied, ___ U.S. ___, 111 S.Ct. 2043, 114 L.Ed.2d 127 (1991). Here, however, the existence of the heinousness aggravator is arguable given the conflicting evidence regarding Price's consciousness, and we will not disturb the trial court's finding.
Having found that only one aggravating circumstance is applicable in this case, we turn now to the mitigating evidence established by DeAngelo. Some of the evidence DeAngelo points to as mitigating was not mitigating at all. For example, he established, and the trial court found, that his victim was not a stranger or a child, that the killing was not for financial gain, that it did not create a great risk to many persons, and that it did not occur during the commission of another crime. Yet, neither evidence of who the victim "was not" nor the fact that the crime was not more aggravated reduces the moral culpability of the defendant or the seriousness of the crime which was committed. The same is true of the finding that DeAngelo was "not a drifter." While this fact was established, we do not believe that it was mitigating in any meaningful sense. We reject DeAngelo's claim that the trial court failed to give these mitigators adequate weight.
However, there was substantial evidence of an ongoing quarrel between Price and DeAngelo, which ultimately culminated in the killing. This history of conflict is relevant mitigation. The trial court also found in mitigation that DeAngelo used to serve as a volunteer fire-fighter, that he served his country in the army, and that he confessed to the crime.
More importantly, DeAngelo also presented significant mental mitigation. Dr. Berland, an expert in forensic psychology, conducted an extensive examination of DeAngelo and concluded that he suffers from bilateral brain damage and that he has hallucinations, delusional paranoid beliefs, and mood disturbance. Berland diagnosed DeAngelo as having Organic Personality Syndrome and Organic Mood Disturbance, psychotic disorders both of which were caused by brain damage, and Bipolar Disorder, a mental illness which causes unstable moods, paranoid thinking, episodes of depression and mania, intensified hallucinations and delusions, irritability, explosiveness, and chronic anger. While the trial court rejected the statutory mitigating factors of extreme mental or emotional disturbance and inability to conform to the requirements of the law,[3] it did find that DeAngelo has the mental health disorders described by Dr. Berland. The trial court also found as nonstatutory mitigation that these disorders are treatable.
DeAngelo argues that the death penalty is disproportionate in this case. This Court has repeatedly noted that the death penalty is reserved for "the most aggravated and unmitigated of most serious crimes." State v. Dixon, 283 So.2d 1, 7 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). This is not such a case. This Court has affirmed death sentences supported by just one aggravating circumstance "only in cases involving either nothing or very little in mitigation." Songer v. State, 544 So.2d 1010, 1011 (Fla. 1989). Having found only one *444 aggravating circumstance exists, and having considered the mitigation established by the record, we find that the sentence of death in this case is disproportionate when compared with other capital cases where this Court has vacated the death sentence and imposed life imprisonment. See, e.g., Clark v. State, 609 So.2d 513 (Fla. 1992); Klokoc v. State, 589 So.2d 219, 222 (Fla. 1991); McKinney v. State, 579 So.2d 80, 85 (Fla. 1991); Songer v. State, 544 So.2d 1010, 1012 (Fla. 1989).
Given our resolution of this issue, it is unnecessary for us to address DeAngelo's remaining penalty phase claims. Accordingly, we affirm DeAngelo's conviction for first-degree murder but reduce his death sentence to life imprisonment without eligibility for parole for twenty-five years from the date of the sentence, less any jail time served.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Section 921.141(5)(i), Fla. Stat. (1989).
[2] Section 921.141(5)(h), Fla. Stat. (1989).
[3] Section 921.141(6)(b), (f), Fla. Stat. (1989).