739 So.2d 90 (1999)
Robert LARKINS, Appellant,
v.
STATE of Florida, Appellee.
No. 91,131.
Supreme Court of Florida.
July 8, 1999.
Rehearing Denied September 3, 1999.
*91 Dwight M. Wells, Tampa, Florida, for Appellant.
Robert A. Butterworth, Attorney General, and Carol M. Dittmar, Assistant Attorney General, Tampa, Florida, for Appellee.
PER CURIAM.
We have on appeal the order of the trial court imposing the death penalty upon Robert Larkins on resentencing. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. For the reason which follows, we vacate Larkins' sentence of death and remand this case to the trial court to impose a life sentence without possibility of parole for twenty-five years.

MATERIAL FACTS
Appellant Robert Larkins was convicted of first-degree murder and robbery in October, 1991. The facts in this case are set forth in Larkins v. State, 655 So.2d 95 (Fla.1995):
On August 30, 1994, [sic][[1]] the body of Roberta Faith Nicolas was found lying face down on the floor of a Circle K store. Debbie Santos, a customer in the store that day, testified that she was in the store with her baby and her young son when she saw a man with tape on his face walk in. Santos knew this man and identified him as Robert Larkins. She testified that he had tape on his nose, forehead, and each side of his face. He pointed a rifle at Ms. Nicolas, the store clerk, demanded money, and then shot her. Larkins then went over to the counter where the cash register was located, and backed out of the store. At some point during this episode, Santos' baby began to cry.
Another customer, Ruben Hernandez, was called by the defense and testified that the same man pointed a rifle at him and demanded money. The man's whole face was covered with tape. Hernandez responded that he had no money. The robber then demanded that the store clerk open the cash register, but it did not open, and the robber told the clerk to step away from the register. She did. When the clerk ducked down, the robber grabbed her by the arm and swung her to the side by some soda machines. Then he fired two shots at her.
When investigators arrived, they found the victim's body lying on the floor. The police also recovered a shell casing from a bullet for a .22 caliber rifle. Subsequently, a .22 caliber rifle was found on a nearby street next to a vacant house and adjacent to Larkins' home. Thomas Gibson testified that on *92 the night of the robbery he had given Larkins this same .22 caliber rifle to hold for him. The spent bullet from the victim's body was identified by an expert as having been fired from this rifle. Larkins did not return the rifle to Gibson. In an alley behind the store, the police found a trail of dimes leading away in a northerly direction, and the store's cash register was found some 60 yards from the store. Ronnie and Charles Baker also saw Larkins with a rifle the night of the robbery. A jail inmate who shared a cell with Larkins testified that Larkins told him of committing the robbery and shooting.
Id. at 97. The jury found Larkins guilty of robbery and first-degree murder. At the penalty phase of the trial, the jury recommended death and the trial judge sentenced Larkins to death. The trial judge found two aggravating factors: (1) the defendant was previously convicted of a violent felony (two convictions in 1973-manslaughter and assault with intent to kill), see § 921.141(5)(b), Fla. Stat. (1991), and (2) the murder was committed for pecuniary gain, see id. § 921.141(5)(f). The court found no statutory or nonstatutory mitigating factors. On appeal, this Court affirmed the convictions but remanded for a reweighing of the aggravating and mitigating factors and for resentencing because the trial court's sentencing order failed to evaluate each mitigating circumstance presented by the defense. See Larkins, 655 So.2d at 101.
Upon remand, the trial court again found the same two aggravating circumstances as before. However, the trial court also found two statutory mitigating circumstances: (1) the murder was committed while the defendant was under the influence of extreme mental or emotional disturbance, see § 921.141(6)(b), and (2) the capacity of the defendant to appreciate the criminality of his conduct or to conform form his conduct to the requirements of the law was substantially impaired, see § 921.141(6)(f). In addition, the court found eleven nonstatutory mitigating factors: (1) the defendant's previous conviction was for manslaughter, not murder; (2) the defendant is a poor reader; (3) the defendant experienced difficulty in school; (4) the defendant dropped out of school during either the fifth or sixth grade; (5) the defendant functions at the lower twenty percent of the population in intelligence; (6) the defendant came from a barren cultural background; (7) the defendant's memory ranks in the lowest one percent of the population; (8) the defendant has chronic mental problems possibly caused by drugs and alcohol; and (9) the defendant is withdrawn and has difficulty establishing relationships; (10) the offense was the result of impulsivity and irritability; and (11) the defendant drank alcohol the night of the incident.
After considering the aggravating and mitigating circumstances, the trial court ruled the aggravators outweighed the mitigators and again sentenced Larkins to death. This appeal follows in which Larkins raises five issues.[2] Upon consideration of the record in this case, we find no error in issues (1), (2), (4) and (5), and therefore those claims are dismissed without further discussion. Larkins' remaining claim relating to proportionality, however, has merit.

APPEAL
Larkins argues that the sentence of death is inappropriate in this case because there were only two aggravating factors and extensive mitigation. We agree.
As we have stated time and again, death is a unique punishment. See Urbin v. State, 714 So.2d 411, 416 (Fla. 1998) (quoting Porter v. State, 564 So.2d *93 1060 (1990)); Terry v. State, 668 So.2d 954, 965 (Fla.1996); Tillman v. State, 591 So.2d 167, 169 (Fla.1991); State v. Dixon, 283 So.2d 1, 7 (Fla.1973). Accordingly, the death penalty must be limited to the most aggravated and least mitigated of first-degree murders. See Dixon, 283 So.2d at 7. In deciding whether death is the appropriate penalty, this Court must consider the totality of the circumstances in the instant case in comparison to the facts of other capital cases and in light of those other decisions. See Urbin, 714 So.2d at 416 (quoting Tillman, 591 So.2d at 169). It is not merely a comparison between the number of aggravating and mitigating factors. See Porter, 564 So.2d at 1064. After considering the aggravating and mitigating circumstances in this case in comparison with other capital cases, we find that this case does not warrant imposition of the death penalty. Cf. Hawk v. State, 718 So.2d 159 (Fla.1998); Kramer v. State, 619 So.2d 274 (Fla.1993); DeAngelo v. State, 616 So.2d 440 (Fla.1993); Livingston v. State, 565 So.2d 1288 (Fla.1988); Fitzpatrick v. State, 527 So.2d 809 (Fla.1988).
In Livingston, the defendant was convicted and sentenced to death for fatally shooting a gas station clerk. The trial court found three aggravating factors-prior violent felony, murder committed during a robbery, and murder committed to avoid arrest. The court balanced those factors against two mitigating circumstances-the defendant's age (seventeen) and the defendant's unfortunate upbringing and rearing-and found that death was warranted. On appeal, we vacated the sentence of death. 565 So.2d at 1293. We struck the avoid arrest aggravator because the evidence failed to establish that avoiding arrest was the dominant or only motive for shooting the victim. Id. at 1292. We also found that the record disclosed significant mitigation which effectively outweighed the remaining two aggravating factors: Livingston was severely beaten as a child by his mother's boyfriend; his mother neglected him; Livingston's youth, inexperience, and immaturity mitigated the offense; Livingston has marginal intellectual functioning; and Livingston extensively used cocaine and marijuana, which counterbalanced the aggravating factors. Id.
In Kramer, the defendant killed the victim during a fight. The trial court found two aggravating factors: prior violent felony and that the murder was especially heinous, atrocious, or cruel (HAC). On appeal from a sentence of death, this Court vacated the sentence due to the substantial mitigating evidence: (1) the defendant was under the influence of mental or emotional stress at the time the crime was committed; (2) the defendant's capacity to conform his conduct to the requirements of the law was severely impaired at the time of the crime; (3) the defendant was a model prisoner; (4) the defendant suffered from alcoholism and prior drug use. 619 So.2d at 276.
We also found evidence of mental or emotional disturbance to be dispositive in vacating sentences of death in DeAngelo and Fitzpatrick. In DeAngelo, the defendant strangled the victim manually and with a ligature and was convicted of first-degree premeditated murder and sentenced to death. 616 So.2d at 441. The defendant presented significant mental mitigation from an expert in forensic psychology, including evidence that the defendant suffered from bilateral brain damage, hallucinations, delusional paranoid beliefs and mood disturbance. Id. at 443. Although the trial court rejected this evidence as insufficient to establish the statutory mental mitigators, it found that the defendant suffered from the mental illnesses attested to by the expert. Id. On appeal, we compared this case to other cases, and held that the sole aggravating factor (cold, calculated and premeditated) did not warrant the imposition of death, especially in light of the substantial evidence of mitigation. Id. at 443-44.
In Fitzpatrick, the defendant fatally shot a police officer while holding several *94 people hostage. 527 So.2d at 810. The trial court sentenced defendant to death after finding five aggravating factors and three mitigating factors: the defendant was mentally and emotionally disturbed; his capacity to conform his conduct to the requirements of the law was substantially impaired; and he suffered from a low mental age. Id. at 811. Despite the five aggravating factors, we vacated the sentence of death because compared to other cases the killing in this case resulted more from the acts of a man-child than from a hard-blooded killer. Id. at 812,
Finally, in Hawk, this Court reversed a sentence of death for the brutal beating of two elderly victims where the two aggravating circumstances failed to outweigh copious evidence presented in mitigation. 718 So.2d at 163. There, uncontroverted evidence established that Hawk suffered from brain impairment from a brain injury and damage to the cerebral cortex, which probably was caused by spinal meningitis Hawk suffered as a child at which time he also became deaf. The mental health expert also testified that Hawk was under the influence of drugs and alcohol at the time of the offense and remembered nothing. Finally, evidence established that Hawk started seeing a psychologist at the age of five and "had poor impulse control even as a child." Id. Based on these facts, the trial court found that Hawk was unable to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. Id. The trial court also found Hawk's age, nineteen, as a statutory mitigating factor and several nonstatutory mitigators, including brain damage, mental and emotional disturbance, loss of hearing, disadvantaged youth, abusive childhood, and lack of education and training. Id. When we considered this evidence in relation to the two aggravating circumstances and other similar cases, however, we found the sentence of death was disproportionate. Id. at 164 & n. 12.
We find the analysis and outcome in the above cases to govern the outcome here. During the penalty phase, the State presented one witness who testified about the circumstances surrounding Larkins' 1972 convictions. On the other hand, the defense presented Dr. Henry L. Dee, a clinical psychologist, who testified about Larkins' extensive history of mental and emotional problems. According to Dr. Dee, Larkins suffers from organic brain damage possibly in both the left and right hemispheres, which affects both his mental and emotional components. Under the mental component, Dr. Dee opined that Larkins has a substantial memory impairment, which ranks him in the lower one percent of the population. Larkins' cerebral damage also affects his emotional component which makes it difficult for him to control his behavior; he is easily irritated by events that would not normally bother other people, and he has poor impulse control. Dr. Dee explained that benign occurrences, such as a baby crying or laughing, could "call forth a great rage" in persons suffering from a mental illness consistent with that suffered by Larkins. Dr. Dee also testified that Larkins has a low average level of intelligence, which means he functions within the lower twenty percent of the population; that he dropped out of school in the fifth or sixth grade; that he has a history of drug and alcohol abuse; and that he had difficulty learning and socializing with others. Based on Larkins' brain impairment, Dr. Dee opined that at the time of the offense, Larkins would have been under the influence of extreme mental and emotional disturbance and his ability to control his actions would have been impaired. All of this evidence was uncontroverted.
Based on the above facts, and considering the nature and extent of both the aggravating and mitigating circumstances, we find that life in prison, rather than death, would be the more appropriate sentence under the totality of the circumstances *95 of this case.[3] We note that the most serious aggravator, the prior violent felony aggravator, was predicated upon two convictions which were committed almost twenty years before the murder in the instant case, and the defendant apparently led a comparatively crime free life in the interim.[4] We also note that neither the heinous, atrocious, or cruel nor the cold, calculated, and premeditated aggravators are present in this case. These, of course, are two of the most serious aggravators set out in the statutory sentencing scheme, and, while their absence is not controlling, it is also not without some relevance to a proportionality analysis. The killing here appears to be similar to the killing that occurred in Livingston and to have resulted from impulsive actions of a man with a history of mental illness who was easily disturbed by outside forces. Indeed, the facts in this case indicate that a baby was in distress and crying during the robbery, circumstances which, according to Dr. Dee, would have affected Larkins to the point of inducing rage and making it difficult for him to control his actions. In addition, there was other extensive mitigation set out in detail in the trial court's sentencing order that cannot be ignored. When we compare the facts in this case to other cases, we cannot conclude that this case constitutes one of the most aggravated and least mitigated of first-degree murders. See Dixon. Accordingly, we hold that death would be a disproportionate penalty under the circumstances presented herein.

CONCLUSION
In sum, we find the mitigating factors outweigh the circumstances presented in aggravation. Accordingly, Larkins' sentence *96 of death is vacated and this case is remanded to the trial court to impose a sentence of life imprisonment without possibility of parole for twenty-five years.[5]
It is so ordered.
SHAW, ANSTEAD and PARIENTE, JJ., and KOGAN, Senior Justice, concur.
WELLS, J., dissents with an opinion, in which HARDING, C.J., concurs.
OVERTON, Senior Justice, dissents.
WELLS, J., dissenting.
I dissent from the majority's decision to set aside the death penalty in this case. In this case, the jury recommended death by a vote of ten to two. The trial judge followed that recommendation. We had the case here in 1995 and sent it back to the trial judge to more expansively explain his weighing of aggravating and mitigating circumstances after another sentencing hearing before him. The trial judge did this, again followed the jury's recommendation, and sentenced the defendant to death.
Pope v. State, 679 So.2d 710 (Fla.1996), is a recent proportionality case comparing aggravators and mitigators. However, such comparison is really not the appropriate manner to test whether a sentence is disproportionate. Rather, looking at this case a whole, when compared with the other cases in which death has been imposed as a sentence, I do not find death to be a disproportionate sentence for this murder.
HARDING, C.J., concurs.
NOTES
[1] The murder occurred on August 30, 1990.
[2] These issues are: (1) trial court failed to hold a competency hearing; (2) trial court failed to hold a Faretta hearing; (3) the death sentence is disproportionate; (4) the trial court gave improper weight to the aggravating and mitigating circumstances; and (5) the state improperly sought to change the trial judge without notice to the defense.
[3] The State points to several cases where sentences of death were upheld and which involved aggravating circumstances similar to those found in this case. See Shellito v. State, 701 So.2d 837 (Fla.1997), cert. denied, ___ U.S. ___, 118 S.Ct. 1537, 140 L.Ed.2d 686 (1998); Mendoza v. State, 700 So.2d 670 (Fla.1997), cert denied, ___ U.S. ___, 119 S.Ct. 101, 142 L.Ed.2d 81 (1998); Mungin v. State, 689 So.2d 1026 (Fla.1995), cert. denied, ___ U.S. ___, 118 S.Ct. 102, 139 L.Ed.2d 57 (1997); Hunter v. State, 660 So.2d 244 (Fla.1995); Clark v. State, 613 So.2d 412 (Fla.1992); Hayes v. State, 581 So.2d 121 (Fla.1991); Freeman v. State, 563 So.2d 73 (Fla.1990); Carter v. State, 576 So.2d 1291 (Fla.1989); Hudson v. State, 538 So.2d 829 (Fla.1989). However, most of these cases lacked significant mitigation, especially evidence of mental mitigation. See Shellito, 701 So.2d at 845 (holding that evidence of organic brain damage was not supported by medical testimony and was contradicted); Mendoza, 700 So.2d at 679 (no statutory mental mitigation and only minimal nonstatutory mitigating evidence of drug use and mental health problems); Mungin, 689 So.2d at 1032 (no statutory mitigators and minimal nonstatutory-defendant could be rehabilitated and was not antisocial); Clark, 613 So.2d at 414 (upholding trial court's rejection of mental mitigation where experts' reports rebutted by state's evidence and no evidence that defendant was intoxicated at time of offense); Hayes, 581 So.2d at 126-27 (holding trial court's rejection of statutory mental mitigators supported by competent evidence in the record); Freeman, 563 So.2d at 76-77 (noting that there was no evidence of statutory mitigation and nonstatutory mitigation not compelling); Carter, 576 So.2d at 1293 (noting that only evidence of organic brain damage came from testimony by defendant's cousin). In Hunter, death was supported by two weighty aggravating factors and relatively weak evidence of mitigation. 660 So.2d at 254. Likewise, in Hudson, although the trial court found extreme emotional disturbance, impaired capacity, and age in mitigation, it gave such evidence extremely little weight. We affirmed the sentence of death in that case. 538 So.2d at 831-32. Based on the extent of mitigating evidence in this case, including the two statutory mental mitigators, we find the above cases to be distinguishable from the facts in the instant case.
[4] In fact, we recently found a death sentence disproportionate in a case involving a prior murder aggravator and only modest mitigation. See Jorgenson v. State, 714 So.2d 423 (Fla.1998). In Jorgenson we relied on mitigating circumstances surrounding the prior murder in determining its importance in our proportionality analysis. Similarly here, it is appropriate to consider the time since the prior violent felony was committed as well as the substantial mitigation in determining whether death or a life sentence is appropriate.
[5] Larkins was convicted for a murder which occurred in 1990. At the time of the offense, section 775.082, Florida Statutes (1989) provided that "[a] person who has been convicted of a capital felony shall be punished by life imprisonment and shall be required to serve no less than 25 years before becoming eligible for parole." § 775.082(1), Fla. Stat. (1989). Although the statute has since changed in that persons convicted of capital crimes are no longer eligible for parole, Larkins' sentence is controlled by the law in effect at the time he committed this offense.