GRIFFIN, J.
The juvenile defendant below, Mark Du-fault [“defendant”], was adjudicated guilty of premeditated first-degree murder of his grandmother. He now appeals contending that: (1) the trial court abused its discretion in denying defendant’s proposed special jury instruction on premeditation; (2) the trial court erred in denying the motion for judgment of acquittal because there was insufficient evidence of premeditation; (3) the trial court should have allowed the defense to present lay testimony of defendant’s Attention Deficit Hyperactivity Disorder diagnosis; and (4) cumulative and *649 repetitious evidence concerning defendant’s statement to police and concerning the injuries to the victim unduly prejudiced defendant. We address only the first two issues and affirm.
Mark Neil Dufault, father of the defendant, testified that on October 16, 1998, he was residing with his mother, Joyce Adams. Mr. Dufault was in bed because he was not feeling well. His son, who lived with his ex-wife about three blocks away, came over to go fishing with his father. Since Mr. Dufault was not feeling well, he told his son to wait for him to rest a little while longer. Defendant went to his grandmother’s room to listen to music with her. Mr. Dufault later heard a scream come from his mother’s bedroom. He went inside and saw defendant standing over his mother, “swinging on her.” The defendant was growling, a sound that Mr. Default had never before heard from him. Mr. Dufault immediately grabbed defendant around his body and his mother collapsed on the ground. Mr. Dufault saw that defendant was holding a red paring knife that had been in the kitchen. He wrestled with his son and attempted to call 911. Mr. Dufault testified that defendant was agitated and he tried to calm him by hitting him in the head, which helped a little. He grabbed the phone with one hand while the other hand held defendant. Defendant grabbed the phone from his father’s hands and the phone fell apart. Mr. Default asked defendant what was wrong with him. Defendant replied that he did not know what was wrong but begged his father to save his grandma. Mr. Default then dragged defendant into the kitchen and called 911. He told 911 that his mother was bleeding and needed help. Mr. Dufault then proceeded to tend to his mother. Defendant was also in the bedroom, banging himself on the head with the telephone saying over and over again that he was stupid. A police officer arrived and Mr. Default told defendant to tell the police officer what he did. Defendant said, “I tried to kill my grandma.” Mr. Dufault said that his mother and the defendant had a very good relationship and would listen to music together often. He had never heard his son say that he wanted to hurt his grandmother.
Officer John Call, of the Lake Mary Police Department, responded to the 911 call and noticed a subject in the carport saying “hurry up, come in here.” Officer Call entered the house, went to the bedroom and saw an elderly female in a sitting position with another gentleman holding her up. The woman’s clothing was saturated with blood. Defendant told Officer Call, “I wanted to kill her, I wanted to murder her so I stabbed her.”
Officer Call arrested defendant and brought him to the station, where he agreed to questioning. The officer taped the questioning. On the tape, defendant stated that he went to the kitchen to get a soda, and instead got a knife with a red handle out of the drawer. He went into his grandmother’s room while she was putting on makeup. He approached from behind and put his hand over her mouth. His grandmother lunged backward and they fell to the bed and on the floor while defendant tried to get the knife out of his back pocket. Defendant lost his grip, his grandmother started screaming for his father, and defendant pulled the knife out and stabbed her.
The defense filed a motion to suppress the videotaped statement, contesting whether defendant was competent to waive his Miranda rights because he apparently suffers from Attention Deficit Hyperactivity Disorder [“ADHD”]. Dr. Michael Maher [“Maher”], a psychiatrist, testified that he evaluated defendant in November 1999. For his evaluation, Maher reviewed police *650 reports, statements of past school history, medical history and a videotape of a statement to the police. Maher learned from the materials he reviewed that defendant had been diagnosed with ADHD, which is a complex disorder of the brain that affects the ability to concentrate and remain focused. Maher also conducted a clinical interview. He learned that defendant had been prescribed Zylert and sleeping medications. Zylert is a medication for treating ADHD which helps patients remain focused. Maher opined that defendant did suffer from ADHD. Maher stated that during the interview, defendant appeared to be emotionless with regard to his grandmother. Maher believed this was due to a dissociative disorder. Maher concluded that at a point during the videotaped interview, defendant lost the ability to understand what was occurring. The State called Dr. William Riebsame, a psychologist, who testified that he evaluated defendant in December 1999 and concluded that he was competent to waive his Miranda rights. The court denied the motion to suppress, finding that defendant’s statement to the police was voluntary and he understood his right to stop the interview.
The medical examiner testified that the grandmother was stabbed six times: one penetrated the neck muscle, one went through the chest tissue and ribs and punctured a lung, one went through the breast bone and perforated the victim’s aorta, and one penetrated two inches into the victim’s left knee. She also had several abrasions on her forearms and hands, and red and swollen knuckles, which were defensive-type wounds. Death was caused by the stab wound to the chest. Defendant was adjudicated guilty of first-degree premeditated murder and sentenced to life imprisonment without possibility of parole.
Defendant first contends that the lower court erred in giving the standard jury instruction on premeditation.[1] He contends it is inadequate and an inaccurate statement of the law. He argues that the trial court recognized this, but misapprehended his discretion to more accurately charge the jury. In discussing whether to expand the standard jury instructions on premeditation, the court stated:
After reading the objection and the cases, I think the Defense is correct. I think the first degree murder instruction is inadequate because it doesn’t instruct the jury as to the elements set forth in the McCutchen case, that there be deliberation or opportunity to reflect.
All right. Unfortunately, I don’t think it’s appropriate for a Court, even though I agree with what you’ve written, Mr. Figgatt, I don’t totally ... I think that this instruction probably goes to [sic] far as far as going to premeditation, but it’s not appropriate, in my opinion, for a trial court to start giving instructions different or even altered from the standard jury instruction unless I can make a finding that in a particular case that the standard jury instruction is, as Mr. Hastings says, inadequate.
I can’t find that the Supreme Court’s instruction is illegal. There are some that are, I think, because we have case law that tells us that, so I’m not gonna give it because I think any decision that has to come from the appellate court, *651 and you’ve raised the issue, and you have raised the issue very well. •
One of my real concerns here is that this case will not be reviewed by the Florida Supreme Court under any circumstances, and I think that’s the appropriate forum. If a Court is going to find the standard jury instruction on premeditated first degree murder is inadequate, then it needs to be the Florida Supreme Court.
So, I’m gonna deny your proposed instruction even though, if I were writing an instruction from scratch, I’d write one a lot more like yours than a lot more like the one that we have, if that’s any consolation to you.
The State contends that the standard jury instruction sufficiently explains the element of premeditation and says that the trial court concluded that the defendant’s proposed instruction was confusing and unnecessary.
Defendant relies on McCutchen v. State, 96 So.2d 152 (Fla.1957) for his contention that the standard jury instruction on premeditation is inadequate. In McCutchen, the supreme court explained:
A premeditated design to effect the death of a human being is a fully formed and conscious purpose to take human life, formed upon reflection and deliberation, entertained in the mind before and at the time of the homicide. The law does not prescribe the precise period of time which must elapse between the formation of and the execution of the intent to take human life in order to render the design a premeditated one; it may exist only a few moments and yet be premeditated. If the design to take human life was formed a sufficient length of time before its execution to admit of some reflection and deliberation on the part of the party entertaining it, and the party at the time of the execution of the intent was fully conscious of a settled and fixed purpose to take the life of a human being, and of the consequence of carrying such purpose into execution, the intent or design would be premeditated within the meaning of the law although the execution followed closely upon formation of the intent.
The State cites to opinions of the supreme court, more recent than McCutchen, which define “premeditation” in a manner consistent with the standard jury instruction. Blackwood v. State, 777 So.2d 399 (Fla.2000); DeAngelo v. State, 616 So.2d 440 (Fla.1993). The Supreme Court of Florida has already rejected this attack on the standard jury instruction. Davis v. State, 698 So.2d 1182 (Fla.1997); Kilgore v. State, 688 So.2d 895 (Fla.1996); Spencer v. State, 645 So.2d 377 (Fla.1994).
Defendant further contends that even if the standard instruction is not wrong, the trial judge ruled in error that it was without authority to modify the standard instruction to improve on it. Defendant relies on Kearse v. State, 662 So.2d 677 (Fla.1995), where the supreme court said that, although standard jury instructions should be used to the extent applicable, the trial judge has the responsibility to properly and correctly charge the jury and the trial judge does not err by adding language to the instruction that is an accurate statement of law. However, a review of the transcript shows that the trial judge understood his authority and that he rejected defense counsel’s proposed instruction. There was no reversible error in failing to modify the instruction.
Defendant next contends that the State offered no evidence of premeditation. Premeditation may .“be formed in a moment and need only exist ‘for such time as will allow the accused to be conscious of the nature of the act he is about to commit and the probable result of that act’.” Blackwood, 777 So.2d at 406, quoting DeAngelo, 616 So.2d 440. Premeditation *652 may be established by circumstantial evidence, id, as it is often impossible to prove by direct testimony and must be inferred by circumstances surrounding the homicide. Griggs v. State, 753 So.2d 117 (Fla. 4th DCA 1999). Evidence from which premeditation may be inferred includes the nature of the weapon used, the presence or absence of adequate provocation, previous problems between the parties, the manner in which the murder was committed, the nature and manner of the wounds inflicted, and the accused’s actions before and after the homicide. See Bedoya v. State, 779 So.2d 574 (Fla. 5th DCA 2001).
Contrary to defendant’s contention, we agree with the State that there is sufficient evidence in the record to support premeditation. After the incident, the defendant told the police officer that he wanted to murder his grandmother. He went into the kitchen and returned with a knife. He approached his grandmother from behind and put a hand over her mouth. A struggle ensued where the grandmother received multiple bruises. The defendant told the police that he was trying to take the knife out of his pocket. After the grandmother screamed, defendant stabbed her six times. One wound was so deep that it penetrated her aorta. Another wound penetrated her lung. The father entered the room and had to pull defendant off the grandmother. These circumstances are evidence of premeditation. See Blackwood, supra.[2]
AFFIRMED.
PALMER and ORFINGER, R.B., JJ., concur.

. The standard jury instruction provides in relevant part that "killing with premeditation" is:
killing after consciously deciding to do so. The decision must be present in the mind at the time of the killing. The law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the killing. The period of time must be long enough to allow reflection by the defendant. The premeditated intent to kill must be formed before the killing.

. See also Bedoya, 779 So.2d 574; DeAngelo, 616 So.2d 440; Miller v. State, 770 So.2d 1144 (Fla.2000).