66 So.3d 912 (2011)
Roy Phillip BALLARD, Appellant,
v.
STATE of Florida, Appellee.
No. SC08-2041.
Supreme Court of Florida.
June 30, 2011.
*915 James Marion Moorman, Public Defender, and Steven L. Bolotin, Assistant Public Defender, Tenth Judicial Circuit, Bartow, FL, for Appellant.
Pamela Jo Bondi, Attorney General, Tallahassee, FL, and Stephen D. Ake, Assistant Attorney General, Tampa, FL, for Appellee.
PER CURIAM.
We have for review the judgment and sentence of the trial court adjudicating Roy Phillip Ballard guilty of first-degree murder and imposing a sentence of death. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons stated herein, we affirm the conviction, but vacate the sentence of death and reduce Ballard's sentence to life imprisonment without the possibility of parole.

FACTS AND PROCEDURAL HISTORY
The evidence presented at trial indicated that Autumn Traub (Autumn) disappeared on September 13, 2006, after being in the company of Roy Phillip Ballard (Ballard), her stepfather. Ballard and his wife, Kathy Ballard, had temporary custody of Autumn's minor daughter, Suny Houghtling (Suny). However, shortly before Autumn's disappearance, Suny moved back in with Autumn and her husband, John Traub. On August 10, 2006, upset about Suny's decision, Ballard confronted Autumn in an attempt to have Suny return to his home in Zephyrhills. The police were called and intervened, advising Ballard that the "custody paperwork" he had was insufficient to cause police to transfer custody of Suny back to the Ballards. Ballard stated to the officer he would do anything he needed to get his granddaughter back. After the investigation of the disappearance of Autumn, authorities became convinced that Ballard had killed Autumn in order to gain custody of Suny and continue his sexual relationship with her. Autumn's body has never been found.
The evidence presented at trial showed that on September 2, 2006, Ballard was depicted in a Lowe's hardware store surveillance video buying an eighteen-inch metal pipe and duct tape. The receipt for the items was found in his car trunk. On September 4, 2006, Ballard was rushed to the hospital after experiencing a series of seizures. During the course of the hospitalization, it was determined that he had suffered a number of small strokes. By *916 September 6, 2006, Dr. Vyas (his treating physician) found that Ballard was cognizant and he was discharged on September 8, 2006. On September 11, 2006, Ballard returned to his job as maintenance supervisor at Atlantic Metals in Tampa, Florida. According to his supervisor, Tom Witzigman, there were no observable changes in Ballard other than that he appeared somewhat tired.
On September 12, 2006, Ballard reported to work at approximately 5:40 a.m. but, later, was sent home by Witzigman after he reported not feeling well. Ballard did not show up for work on September 13, 2006, but returned September 14, 2006, and continued to work regularly thereafter.
On September 12, 2006, Ballard left work and traveled past his home in Zephyrhills to a remote area in North Lakeland as evidenced by his cell phone utilizing a cellular tower in that area. The morning Autumn disappeared, September 13, 2006, his cell phone was "captured" by the same cellular tower.
During the course of the continued investigation, Ballard's car trunk was searched. The search resulted in two Wal-Mart bags with small spots of blood on them. The results of the DNA tests performed on the blood found on the Wal-Mart bags showed a statistically certain match to Autumn's DNA. There was some blood found on the duct tape, from which experts were able to obtain a partial DNA profile consistent with Autumn's. The trunk also contained numerous shopping bags, one with a spot of Autumn's blood on it; a shovel; concrete blocks; a cooler; the Lowe's receipt for the metal pipe and duct tape; and a sex toy with Suny's DNA on it. On September 21, 2006, Ballard made a taped statement to police in which he acknowledged buying some duct tape but said he could not remember why he bought the metal pipe or what he did with it. The trial court found this troubling because an eighteen-inch metal pipe is an unusual piece of hardware that would have a specific purpose. Ballard also told police that on September 13, 2006, he drove to Autumn's residence. He situated himself so as not to be observable from Autumn's home and waited for John to leave for work. He then approached Autumn to discuss Suny's future, and convinced her to accompany him to get a drink and dropped her off at a Walgreens. However, the police found no evidence to corroborate Ballard's statements other than that Autumn left her residence in his company. To the contrary, the evidence collected by investigators disproves Ballard's description of what he and Autumn did that morning.
Further, Michael Needham (Ballard's former cellmate) testified that Ballard told him he hit Autumn in the back of her head with the pipe. Then, after killing her, he knocked out her teeth to eliminate any comparison to dental records, placed her body in some type of acidic water, and held her down with concrete blocks. He then disposed of the murder weapon by grinding it down at his place of employment, a metal fabrication shop. Needham also testified Ballard confessed to having had a sexual relationship with Suny.
The jury convicted Ballard and recommended the death sentence on a vote of nine to three. The trial court sentenced Ballard to death.[1]

*917 ISSUES ON APPEAL
Ballard raises three issues on appeal: (1) whether the trial court erred in admitting collateral crime evidence; (2) whether the trial court erred in finding the CCP aggravator; and (3) whether the death sentence is proportionate. We affirm on issues 1 and 2. Additionally, we find competent, substantial evidence to support the conviction. However, upon our proportionality review, we conclude that the sentence should be reduced to life imprisonment without the possibility of parole.

GUILT PHASE

Sufficiency of the Evidence
While this issue is not contested by Ballard, we have a mandatory obligation to determine the sufficiency of the evidence to sustain the homicide conviction. We have outlined the evidence presented at trial and, upon review, find that evidence sufficient to sustain Ballard's conviction of first-degree murder.

Admission of Collateral Crime Evidence
Ballard claims that the evidence relating to his sexual relationship with Suny was overly prejudicial and requires a new trial. We disagree.
"The admissibility of collateral crime evidence is within the discretion of the trial court, and the trial court's ruling shall not be disturbed upon review absent an abuse of that discretion." Hodges v. State, 885 So.2d 338, 357 (Fla.2004); see Sexton v. State, 697 So.2d 833, 837 (Fla. 1997). However, a trial court's discretion is limited by the rules of evidence. Johnston v. State, 863 So.2d 271, 278 (Fla.2003). "Discretion . . . is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court." Huff v. State, 569 So.2d 1247, 1249 (Fla.1990) (quoting Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla. 1980)).
In Williams v. State, 110 So.2d 654 (Fla.1959), we articulated the following standard for the admission of such evidence:
Our view of the proper rule simply is that relevant evidence will not be excluded merely because it relates to similar facts which point to the commission of a separate crime. The test of admissibility is relevancy. The test of inadmissibility is a lack of relevancy.
Id. at 659-60. As codified in section 90.404(2), Florida Statutes (2006), "[s]imilar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Thus, relevant evidence of other crimes, wrongs, or acts is admissible if the probative value to show motive, intent, *918 preparation, plan, knowledge, identity, or absence of mistake or accident outweighs any unfair prejudice, confusion of the issues, misleading of the jury, or needless presentation of cumulative evidence. See LaMarca v. State, 785 So.2d 1209 (Fla. 2001). Finally, collateral crimes evidence is "inextricably intertwined" if the evidence is necessary to (1) adequately describe the deed; (2) provide an intelligent account of the crime(s) charged; (3) establish the entire context out of which the charged crime(s) arose; or (4) adequately describe the events leading up to the charged crime(s). Dorsett v. State, 944 So.2d 1207 (Fla. 3d DCA 2006).
Here, the State presented testimony from multiple witnesses that Ballard engaged in inappropriate conduct with Suny. Neighbors testified that they witnessed the pair kissing and fondling each other. Suny herself testified that they engaged in intercourse "every other weekend" her entire eighth grade year. She further testified that while Ballard was in the hospital, immediately prior to Autumn's disappearance, he told Suny that he loved her and wanted to marry her. The State also presented evidence in the form of the sex toy found in the trunk of Ballard's car that had traces of Suny's DNA on it. The State alleges that this evidence is relevant to show motive and inextricably intertwined with the testimony needed to establish the crime. We agree.
The evidence presented that Ballard had a sexual relationship with Suny was not wholly inflammatory without any relevance to the case. The only testimony presented was relevant to establish why Ballard would want to murder Autumn to regain custody of Suny. As argued by the State, there was no reasonable way for the State to have excluded the testimony while accurately describing the chain of events that led to Autumn's disappearance. See, e.g., LaMarca, 785 So.2d at 1212-13 (upholding the admission of evidence that the defendant raped his daughter because it was relevant to show the defendant's motive to murder his daughter's husband so that he could have his daughter to himself). Suny testified that she hid from Ballard when he first attempted to retrieve her from her mother's home. John Traub testified that Suny had requested he get a restraining order against Ballard. Neither of these statements would make sense to the jury without the context of Ballard's relationship with Suny. See id. at 1213 (noting that the testimony was relevant because it put into context the victim's admonition to La-Marca to stay away from his wife).
Because the collateral crime evidence that Ballard was engaged in an illegal sexual relationship with Suny was relevant to establish motive and inextricably intertwined with the testimony of the chain of events, we deny relief on this claim.

SENTENCING PHASE

Cold, Calculated, and Premeditated Aggravator
Ballard next alleges that the trial court improperly found that the murder was cold, calculated, and premeditated. We disagree.
In reviewing the trial court's finding of an aggravating circumstance, this Court's "task on appeal is to review the record to determine whether the trial court applied the right rule of law for each aggravating circumstance and, if so, whether competent substantial evidence supports its finding." McWatters v. State, 36 So.3d 613, 641 (Fla.2010) (quoting Lynch v. State, 841 So.2d 362, 368 (Fla. 2003)), cert. denied, ___ U.S. ___, 131 S.Ct. 510,178 L.Ed.2d 378 (2010).
We have stated:
To establish the CCP aggravator, the State must prove beyond a reasonable *919 doubt that (1) the killing was the product of cool and calm reflection and not an act prompted by emotional frenzy, panic, or a fit of rage (cold); (2) the defendant had a careful plan or prearranged design to commit murder before the fatal incident (calculated); (3) the defendant exhibited heightened premeditation (premeditated); and (4) the murder was committed with no pretext of legal or moral justification.
McWatters, 36 So.3d at 640-41 (citing § 921.141(5)(i), Fla. Stat. (2009); Pearce v. State, 880 So.2d 561, 575-76 (Fla.2004)). "The CCP aggravator pertains specifically to the state of mind, intent, and motivation of the defendant." Wright v. State, 19 So.3d 277, 298 (Fla.2009) (citing Brown v. State, 721 So.2d 274, 277 (Fla.1998)). The trial court's determination of whether CCP is present in a case is based upon the totality of the circumstances. Hudson v. State, 992 So.2d 96 (Fla.2008), cert. denied, ___ U.S. ___, 129 S.Ct. 1360, 173 L.Ed.2d 621 (2009).
Ballard argues that CCP was not proven because the facts used to establish the aggravator are based in speculation. This argument is without merit. CCP can be proven by circumstantial evidence. Pearce v. State, 880 So.2d 561 (Fla.2004). CCP can be indicated by the circumstances showing such facts as advance procurement of a weapon, lack of resistance or provocation, and the appearance of a killing carried out as a matter of course. Swafford v. State, 533 So.2d 270 (Fla.1988).
The first element, "cold" means "cool and calm reflection, and not an act prompted by emotional frenzy, panic, or a fit of rage." Jackson v. State, 648 So.2d 85, 89 (Fla.1994). This element was established by competent, substantial evidence. The evidence presented at trial showed that Ballard purchased the murder weapon weeks before the actual murder occurred. Ballard's hospitalization only provided additional time for him to reflect on his actions and plan his attack.
The second element, "calculated" means the defendant had a "careful plan or prearranged design to commit murder." Jackson, 648 So.2d at 89. This requires a careful plan or design to kill, not to commit another crime to which the murder was incidental. Id. There is competent, substantial evidence to support this element. Ballard told Needham that he took the murder weapon, an eighteen-inch pipe, to work and ground it down. Ballard further told Needham that he had hit Autumn in the back of the head to kill her, and struck her again to knock out her teeth to prevent her identification through dental records. The evidence showed that Ballard waited outside of Autumn's home and did not approach the door until after her husband left for work. This evidence supports that Ballard had a careful plan or design to kill Autumn.
The third element, "premeditated" requires more than that required to prove first-degree murder. It is heightened premeditation, defined as "deliberate ruthlessness." See Wuornos v. State, 644 So.2d 1000, 1008 (Fla.1994) (citing Walls v. State, 641 So.2d 381, 388 (Fla.1994)). There is competent, substantial evidence to support the finding of this element. Ballard purchased the materials used to murder Autumn weeks before the crime. He lay in wait while her husband prepared to leave for work. He escorted her from her home under false pretenses. Then, presumably, he took her to a remote location before striking her with the pipe he purchased for this specific purpose. This Court has previously upheld a finding of CCP where a defendant laid in wait for the victim's arrival. See Dennis v. State, 817 So.2d 741, 765 (Fla.2002) (upholding CCP where facts showed defendant arrived at the apartment *920 before the victim and waited for her arrival).
Accordingly, we find this aggravator was supported by competent, substantial evidence.

Proportionality
We find the imposition of the death penalty in this case to be disproportionate. This Court has previously stated that CCP is one of the weightiest aggravating circumstances. See Morton v. State, 995 So.2d 233, 243 (Fla.2008). However, this Court has also held that the death penalty is reserved only for those circumstances where the most aggravating and the least mitigating circumstances exist. See, e.g., State v. Dixon, 283 So.2d 1 (Fla. 1973). This is not such a case. In this case, the trial court found CCP to be the only aggravating circumstance. The trial court also found three statutory mitigating factors(1) the defendant was under the influence of extreme mental or emotional disturbance at the time the capital felony was committed, (2) the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired, and (3) the age of the defendant. Additionally, the trial court considered numerous nonstatutory mitigating factors. Accordingly, we find the death sentence to be disproportionate when comparing this case to other death penalty decisions. See, e.g., DeAngelo v. State, 616 So.2d 440 (Fla. 1993) (concluding the defendant's death sentence was disproportionate where the only aggravating circumstance found was CCP); Klokoc v. State, 589 So.2d 219 (Fla. 1991) (finding the one aggravating circumstance, CCP, did not outweigh the mitigating factors when compared to other death penalty cases).

Ring[2]
Ballard argues that Florida's death penalty statute is unconstitutional. Because we are remanding this case for an entry of a sentence of life imprisonment, Ballard's argument is now moot.

CONCLUSION
Because we find that there is sufficient evidence to uphold Ballard's conviction for first-degree murder, we affirm the conviction. However, because we find the sentence to be disproportionate, we reverse the sentence of death and remand to the trial court for entry of an order sentencing Ballard to life imprisonment without the possibility of parole.
It is so ordered.
PARIENTE, LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.
POLSTON, J., concurs in part and dissents in part with an opinion, in which CANADY, C.J., concurs.
POLSTON, J., concurring in part dissenting in part.
I agree with the majority's decision to affirm Ballard's conviction for first-degree murder. I also agree that there is competent substantial evidence to support the cold, calculated, and premeditated (CCP) aggravator. Unlike the majority, however, I would affirm Ballard's death sentence because it is proportionate when compared to other death penalty cases. See, e.g., Butler v. State, 842 So.2d 817 (Fla.2003) (upholding death sentence where trial court found one aggravator and several mitigators); LaMarca v. State, 785 So.2d 1209 (Fla.2001) (upholding death sentence where trial court found one aggravator and less than substantial mitigation in case where father murdered son-in-law in order to have his daughter, who he had raped, *921 for himself). Planning in advance and executing a brutal murder for the purpose of continuing an inappropriate and incestuous relationship with the victim's minor daughter, with only mitigation of little and slight weight, certainly qualifies as one of the most aggravated and least mitigated of murders. See Windom v. State, 656 So.2d 432, 440 (Fla.1995) ("It is well settled that it is not the number of aggravating and mitigating circumstances that is critical but the weight to be given each of them.").
The trial court here found the CCP aggravator based upon Ballard's deliberate actions after he realized that his stepdaughter was not going to return custody of her minor daughter to Ballard, custody Ballard desired in order to continue his sexual relationship with the minor. Ballard began planning the murder of Autumn Traub in early September when he purchased an eighteen-inch metal pipe and duct tape from a hardware store. And the day before he killed her, Ballard scouted a remote area where he could commit the murder and dispose of the body. Then, Ballard coldly carried out his plan on the morning of September 13, 2006, when he lured his stepdaughter from her home and to her death after stealthily waiting for her husband to leave the house.
This Court has repeatedly stated that CCP is one of the most serious and weightiest aggravating circumstances. See Diaz v. State, 860 So.2d 960, 971 (Fla. 2003); Morton v. State, 789 So.2d 324, 331 (Fla.2001); Larkins v. State, 739 So.2d 90, 95 (Fla.1999). This Court also has explained that "[w]hen one or more of the aggravating circumstances is found, death is presumed to be the proper sentence unless it or they are overridden by one or more of the mitigating circumstances." Diaz v. State, 860 So.2d at 971 (quoting State v. Dixon, 283 So.2d 1, 9 (Fla.1973)). However, in this case, the majority summarily vacates Ballard's death sentence and reduces it to life by simply identifying CCP as the only aggravator. See majority op. at 919-20.
This Court has upheld death sentences based upon a single aggravating circumstance. See Butler, 842 So.2d 817; LaMarca, 785 So.2d 1209; Burns v. State, 699 So.2d 646 (Fla.1997); Ferrell v. State, 680 So.2d 390 (Fla.1996); Cardona v. State, 641 So.2d 361 (Fla.1994), postconviction relief granted on other grounds, 826 So.2d 968 (Fla.2002). While it is true that "[t]his Court has vacated numerous death sentences where there was only one aggravating factor[,] those cases generally involved substantial mitigating circumstances." LaMarca, 785 So.2d at 1216. Unlike those cases, the trial court here found the mitigation to be less than substantial. And it is not this Court's function to reweigh the mitigating circumstances. See Merck v. State, 975 So.2d 1054, 1065 (Fla.2007) ("This Court reviews a trial court's assignment of weight to proven mitigating factors under an abuse-of-discretion standard. Again, we do not reweigh the aggravating and mitigating factors. We defer to the trial court's determination. . . .").
In this case, the trial court indicated that it was aware of this Court's single aggravator decisions, but after weighing the single strong aggravator of CCP against the "very little" mitigation, the trial court found that the aggravating circumstance "far outweighs" the mitigating circumstances.[3] More specifically, while *922 the trial court found three statutory mitigators and various nonstatutory mitigators, it assigned this mitigation less than substantial weight. In regard to the statutory mitigator of extreme mental or emotional disturbance due to alleged stroke-induced brain damage, the trial court explained that it was only given "slight weight" because of testimony explaining that the MRI findings were not significant and testimony that there were "no outward signs of brain damage" and no changes in Ballard's behavior or demeanor. And the trial court only gave the aggravator of capacity to appreciate the criminality of his conduct "slight weight" because the alleged drug toxicity exacerbating his medical problems would cause dizziness and slurred speech, not confusion or anything else that would lead to Ballard not being able to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. Additionally, the trial court assigned the statutory age aggravator "little to slight weight," because, although Ballard was 65 at the time of the murder, his aging "did not appear to slow him down" as he worked at a full-time job that started before 7:00 a.m. and "required both physical stamina and mental acuity." Furthermore, much of the proposed nonstatutory mitigation involved Ballard's actual motive for killing his stepdaughter, namely his incestuous relationship with her minor daughter. See majority op. at 916-17 n. 1 (noting that the trial court considered that Ballard was charitable to his stepfamily (no weight), that Ballard had a lack of societal inhibition (little weight), that Ballard suffered from an obsession to regain custody of the minor girl (no weight), that Ballard had a past domestic relationship with his victim and her minor daughter (no weight), and that Ballard was involved in a quarrel with the victim over her daughter's custody (no weight)). Therefore, because this case involved less than substantial mitigation, it is not similar to the single aggravator cases in which this Court has found the death sentence disproportionate. Cf. Besaraba v. State, 656 So.2d 441, 446-47 (Fla.1995) (finding death sentence disproportionate with single aggravator and "vast" mitigation); Nibert v. State, 574 So.2d 1059, 1062-63 (Fla.1990) (finding death sentence disproportionate with single aggravator and "substantial mitigation").
This case is also not similar to the cases that the majority cites when concluding that Ballard's death sentence was disproportionate. See majority op. at 920. In contrast to this case, the cases cited by the majority involved substantial mitigation, including evidence of severe and debilitating mental disorders. Specifically, the defendant in DeAngelo v. State, 616 So.2d 440, 443 (Fla. 1993), had bipolar disorder, psychotic disorders, hallucinations, delusions, and paranoid thinking. And there was evidence that the defendant in Klokoc v. State, 589 So.2d 219, 221 (Fla.1991), suffered from bipolar affective disorder, manic type with paranoid features, among other mental problems.
To summarize, as found by the trial court, this case involves one of the most serious aggravators and less than substantial mitigation. It is not this Court's function to reweigh these aggravating and mitigation circumstances. See Merck, 975 So.2d at 1065. The death sentence here is proportionate when compared to other death penalty cases. See, e.g., Butler, 842 So.2d 817; LaMarca, 785 So.2d 1209. Additionally, although the majority did not address it, Ballard's claim that his death sentence is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), is without merit. See Porter v. Crosby, 840 So.2d 981, 986 (Fla. 2003) (holding in as-applied challenge that death is the statutory maximum sentence for first-degree murder); Butler v. State, *923 842 So.2d at 834 (upholding death sentence with HAC aggravator found by the trial court); see also Bottoson v. Moore, 833 So.2d 693 (Fla.2002); King v. Moore, 831 So.2d 143 (Fla.2002).
Accordingly, I would affirm both Ballard's conviction and death sentence. I respectfully concur in part and dissent in part.
CANADY, C.J., concurs.
NOTES
[1] The trial court found the existence of one aggravating circumstance: that the capital felony was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification (CCP).

The trial court found the following statutory mitigating factors: (1) the capital felony was committed while the Defendant was under the influence of extreme mental or emotional disturbanceslight weight; (2) the capacity of the Defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impairedslight weight; (3) The age of the Defendant at the time of the crimelittle to slight weight. Additionally, the trial court considered the following nonstatutory mitigating factors: (1) Ballard has a close relationship with his wifelittle to no weight; (2) Ballard can continue the relationship with his wife in prisonlittle to no weight; (3) Ballard has a strong work ethicslight weight; (4) Ballard was charitable to his stepfamilyno weight; (5)-(15) medical and mental problemsvery slight weight when combined; (16) lack of impulse controlvery little weight; (17) lack of societal inhibitionlittle weight; (18) Ballard suffered from an obsession to regain custody of Suny Houghtling no weight; (19) Ballard had in the past a domestic relationship with Autumn Traub and Suny Houghtlingno weight; (20) Ballard was involved in an ongoing quarrel with the Traubs over Suny's custodyno weight.
[2] Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
[3] The majority's ruling takes us further away from Florida's death penalty statute, which provides that the trial court must weigh mitigators against aggravators. See § 921.141(3) (instructing the trial court to set forth written finding that the mitigators do not outweigh the sufficient aggravators). Nothing in the statute or constitution limits the weight or effect of a single aggravator.